Andres F. Quintana (SBN 190525)
John M. Houkom (SBN 203240)
**QUINTANA LAW GROUP**
A Professional Law Corporation
26135 Mureau Road, Suite 101
Calabasas, California 91302
Telephone: (818) 914-2100
Facsimile: (818) 914-2101
E-mail: andres@qlglaw.com
        john@qlglaw.com

Attorneys for Defendants Brain Tunnelgenix Technologies Corp.,
Marcio Abreu, Joseph Titone, and Titronics Research & Development Co., Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DATA MARK, INC. dba DELTATRAK TECHNOLOGIES, a California corporation; FREDERICK L. WU, an individual, | CASE NO.   3:C10-CV-04958-EDL |
| Plaintiffs, | **DEFENDANTS BRAIN TUNNELGENIX TECHNOLOGIES CORP. AND MARCIO ABREU'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION [FED.R.CIV.P. 12(b)(2)]; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF MARCIO ABREU AND ANDRES F. QUINTANA** |
| vs. | |
| BRAIN TUNNELGENIX TECHNOLOGIES CORP. f/k/a ETERLINK INTERNATIONAL CORPORATION, a Delaware corporation; MARCIO AURELIO MARTINS ABREU a/k/a M. MARC ABREU, M.D., an individual; JOSEPH ROGER TITONE, an individual; TITRONICS RESEARCH & DEVELOPMENT CO., INC., an Iowa corporation; and DOES 1 through 100, inclusive, | |
| | **Date:       February 8, 2011** |
| | **Time:       9:00 A.M.** |
| | **Courtroom:  E (15th Floor)** |
| | **Judge:      Hon. Elizabeth D. Laporte** |
| Defendants. | [[Proposed] Order Lodged Concurrently Herewith Concurrently Herewith] |
| | Complaint filed: November 2, 2010 |

Quintana Law
Group, APC

1   TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that on February 8, 2011 at 9:00 a.m., or as soon thereafter as

3   the matter may be heard by this Court, in Courtroom E of the United States District Court for the

4   Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California

5   94102, before the Honorable Elizabeth D. Laporte, Defendants MARCIO ABREU ("Abreu") and

6   BRAIN TUNNELGENIX TECHNOLOGIES CORP. ("BTTC," or collectively with Abreu, the

7   "BTTC Defendants"), will and hereby do move the Court for an order dismissing Plaintiffs DATA

8   MARK, INC. and FREDERICK L. WU's (collectively, the "Plaintiffs") Complaint in its entirety

9   without leave to amend pursuant to *Federal Rule of Civil Procedure* 12(b)(2) for lack of personal

10  jurisdiction over the Defendants.  In the alternative, the BTTC Defendants move for a dismissal of

11  the Complaint on the basis of *forum non conveniens*.

12        This motion is based upon this Notice of Motion and Motion, the attached Memorandum

13  of Points and Authorities, the Declarations of Marcio Abreu and Andres F. Quintana, filed

14  concurrently herewith, all pleadings on file with the Court, and such other matters as may come

15  before the Court.

16

17  DATED: December 29, 2010            QUINTANA LAW GROUP, APC

18

19                                      By:

20                                          _____
                                            Andres R. Quintana, Esq.
21                                          John M. Houkom, Esq.
                                            Attorneys For Defendants Brain Tunnelgenix
22                                          Technologies Corp., Marcio Abreu, Joseph
                                            Titone, and Titronics Research & Development
23                                          Co., Inc.

24

25

26

27

28

Quintana Law
Group, APC

1

# TABLE OF CONTENTS

2   MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 3

3   I.   ISSUES TO BE DECIDED .................................................................................. 3

4   II. RELEVANT FACTS ............................................................................................ 5

5   III.  ARGUMENT ...................................................................................................... 8

6       A.  THIS COURT LACKS PERSONAL JURISDICTION OVER THE BTTC
7       DEFENDANTS ......................................................................................................... 8

8           1. The BTTC Defendants Do Not Have "Continuous and Systematic Contacts" With The
            State of California Sufficient To Support General Jurisdiction ..................................... 9
9

10          2. The BTTC Defendants Do Not Have The Contacts With The State Of California That
            Would Establish Specific Jurisdiction Over the BTTC Defendants In This Case ...... 13

11
            a. The BTTC Defendants Have Not Purposefully Availed Themselves Of, Or Directed
12          Activities Towards, The State Of California .................................................................. 14

13          b. The BTTC Defendant's Alleged Contacts With The State  California Are Not A "But
            For" Cause of Plaintiff's Alleged Claims ..................................................................... 15
14

15          c. Exercising Personal Jurisdiction Over Either Of The BTTC Defendants In The State
            of California Would Be Unreasonable .......................................................................... 16

16
            3. Defendant Marcio Abreu Should Be Dismissed As No Allegations Were Made To
17          Support Jurisdiction Over Him Personally ................................................................... 18

18      B.  THIS COURT SHOULD DISMISS THIS ACTION ON THE BASIS OF
        FORUM NON CONVENIENS .............................................................................. 19
19
            1. The Private And Public Interests Weigh Heavily In Favor Of Dismissal On The
20          Grounds Of Forum Non Conveniens .......................................................................... 20

21          a. Private Interests Favor The Connection Judicial System ......................................... 21

22          b. Public Interests Also Weigh In Favor of Connecticut ............................................ 22

23  IV.  CONCLUSION .................................................................................................. 23

24

25

26

27

28

Quintana Law
Group, APC

1

## TABLE OF AUTHORITIES

2

3  <u>**FEDERAL CASES**</u>

4

<u>Amini Innovation Corp. v. JS Imports, Inc.</u>

5       497 F.Supp.2d 1093 (C.D. Cal. 2007) ............................................................... 8

6

<u>Amoco Egypt Oil Co. v. Leonis Navigation Co.</u>

7       1 F.3d 848 (9th Cir. 1993) ............................................................................. 10

8  <u>Asahi Metal Industry Co., Ltd. v. Superior Court</u>

        480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed. 2d 92 (1987) ...................................... 16

9

10  <u>Ballard v. Savage</u>

        65 F.3d 1495 (9th Cir. 1995) ........................................................................... 15

11

12  <u>Bancroft & Masters, Inc. v. Augusta Nat. Inc.</u>

        223 F.3d 1082 (9th Cir. 2000) ..................................................................... 9, 14

13

14  <u>Biswas v. HR Value Group, LLC</u>

        2002 WL 31261160 (N.D. Cal. 2002) ........................................................ 17, 18

15

16  <u>Brand v. Menlove Dodge</u>

        796 F.2d 1070 (9th Cir. 1986) .................................................................. 10, 12

17

18  <u>Burger King Corpv. Rudzewicz</u>

        471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 ................................................ 15

19

20  <u>Calder v. Jones</u>

        465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed. 2d 804 (1984) ..................................... 15

21

22  <u>CE Distrib., LLC v. New Sensor Corp.</u>

        380 F.3d 1107 (9th Cir. 2004) ......................................................................... 14

23

24  <u>Cheng v. Boeing Co.</u>

        708 F.2d 1406 (9th Cir. 1983) ......................................................................... 22

25

26  <u>Cubbage v. Merchant</u>

        744 F.2d 665 (9th Cir. 1984) .......................................................................... 10

27

28  <u>Cybersell, Inc. v. Cybersell, Inc.</u>

        130 F.3d 414 (9th Cir. 1997) ........................................................................... 11

Doe v. Unocal Corp.
     248 F.3d 915 (9th Cir. 2001)............................................................ 13, 14, 16

Dole Food Co. v. Watts
     303 F.3d 1104 (9th Cir. 2002) ................................................................ 20, 21

Gates Learjet Corp. v. Jensen
     743 F.2d 1325 (9th Cir. 1984) ....................................................................... 12

Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarian Co.
     284 F.3d 114 (9th Cir. 2002)................................................................. 11, 16

Greenspun v. Del E. Webb Corporation
     634 F.2d 1204 (9th Cir. 1980) ......................................................................... 9

Helicopteros Nacionales de Colombia S.A. v. Hall
     466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed. 2d 404 (1984) ........................................ 9

Hertz Corp v. Friend
     -- U.S. --, 130 S.Ct. 1181, L.Ed.2d (2010) ......................................................... 13

Intel Corp. v. Silicon Storage Tech., Inc.
     20 F.Supp.2d 690 (D.Del. 1998) ................................................................... 10

International Shoe Co. v. Washington
     326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ................................................. 9

Lueck v. Sundstrand Corp.
     236 F.3d 1137 (9th Cir. 2001) ............................................................. 19, 20, 21

Mink v. AAAA Development LLC
     190 F.3d 333 (5th Cir. 1999)......................................................................... 11

Nichols v. G.D. Searle & Co.
     991 F.2d 1195 (4th Cir. 1993) ....................................................................... 10

Omeluk v. Langsten Slip & Batbyggeri A/S
     52 F.3d 267 (9th Cir. 1995) ........................................................................... 13

Pacific Atlantic Trading Co. v. M/V Main Express
     758 F.2d 1325 (9th Cir. 1985)......................................................................... 8

Piper Aircraft Co. v. Reyno
     454 U.S. 235, 102 S.Ct. 252, 70 L.Ed. 2d 419 (1981)............................... 19, 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Rio Properties, Inc. v. Rio Int'l Interlink
    284 F.3d 1007 (9th Cir. 2002)................................................................. 8

Schwarzenegger v. Fred Martin Motor Co.
    374 F.3d 797 (9th Cir. 2004)............................................................... 8, 10

Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme
    433 F.3d 1199 (9th Cir. 2006)....................................................... 9, 13, 16

**STATE CASES**

Goehring v. Superior Court
    62 Cal.App.4th 894 (1998)................................................................ 15

Snowney v. Harrah's Entertainment, Inc.
    35 Cal.4th 1054 (2005)....................................................................... 11

Stone v. Texas
    76 Cal.App.4th 1043 (1999)............................................................... 14

**FEDERAL STATUTES**

Fed. R. Civ. P. 12(b)(2)................................................................... 3, 5, 8

**STATE STATUTES**

Cal. *Civ. P. Code* § 410.10 (West 2008) ................................................ 9

**TREATISES**

16 Moore's Federal Practice §108.41 [3] (3d ed. 1997) ............................. 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   ISSUES TO BE DECIDED

This lawsuit should not have been filed in the State of California.  Plaintiffs DATA MARK, INC. ("Data Mark") and FREDERICK L. WU's ("Wu," or collectively with Data Mark, the "Plaintiffs") allege a series of causes of action against Defendants MARCIO AURELIO MARTINS ABREU ("Abreu"), an individual residing in and working in the State of Connecticut, and BRAIN TUNNELGENIX TECHNOLOGIES CORP. ("BTTC," or collectively with Abreu, the "BTTC Defendants"), a Delaware corporation headquartered in the State of Connecticut.  In brief, this action should be dismissed pursuant to *Fed. R. Civ. P.* 12(b)(2) as the State of California does not have general or specific personal jurisdiction over either of the BTTC Defendants.  The BTTC Defendants are not located in the State of California, do not have offices in the State of California, own no property or assets in the State of California, have limited contact with the State of California, and have never directly marketed services toward the State of California.

The apparent crux of the Complaint are alleged agreements between Plaintiffs and the BTTC Defendants performed primarily in and for the benefit of Connecticut residents.  Specifically, Plaintiffs allege that the BTTC Defendants agreed to provide Plaintiffs certain interests in BTTC and other consideration in exchange for investment in BTTC and purported research, development and production work related to intellectual property owned by the BTTC Defendants.  Conspicuously absent from the Complaint are any of the purported agreements between the parties or the specific terms of said purported agreement being breached.  Even taking the Plaintiffs' allegations as true, however, there is only an attenuated relationship between those purported agreements and the State of California.

Moreover, the documentary evidence demonstrates that the Plaintiffs' contentions regarding the two primary bases for jurisdiction in this District alleged in the Complaint: (1) the alleged existence of BTTC "principal place of business" within this District (Complaint, ¶3), and (2) a purported written agreement between Plaintiffs and BTTC (Complaint, ¶¶29, 30), are insupportable.

First, the Plaintiffs make the conclusory averment that BTTC was "doing business in

1  California with a principal place of business located in the City of Pleasanton, Alameda County,

2  California." Complaint ¶3. In fact, BTTC never did business in California, and never had its

3  principal place of business in California. Declaration of Marcio Abreu ("Abreu Decl."), ¶¶4, 8-11,

4  30. While BTTC was provided a delimitated, temporary small room at the offices of Deltatrak, Inc. in

5  Pleasanton, California (as explained in greater detail below), that space lacked the typical and

6  fundamental business accoutrements of an actual, veritable business office. Abreu Decl., ¶¶9-10.

7  Plaintiffs now seek to haul the BTTC Defendants into the Northern District of California based on

8  those minimal contacts with the State of California.

9       Second, notwithstanding the Plaintiffs' allegations, but consistent with the Plaintiffs'

10  failure to include any such agreement with the Complaint, there is no written contract between

11  Plaintiff DataMark and Defendant BTTC, let alone one that "was entered into in California and

12  was to be performed in California." Complaint, ¶30. Indeed, no such agreement and its clauses

13  was ever presented to BTTC's Board of Directors, let alone authorized by it. Abreu Decl., ¶21.

14      In regard to Defendant Abreu, the Plaintiffs failed to avouch even cursory allegations to

15  demonstrate jurisdiction over him, and instead simply admit that "Abreu resides in the City of

16  Hamden, New Haven County, Connecticut." Complaint, ¶5.

17      Accordingly, as a matter of fact and law, this Court lacks personal jurisdiction over both

18  BTTC and Abreu for the following reasons:

19      • The Court lacks general jurisdiction because the BTTC Defendants do not have the

20        requisite "systematic and continuous" contacts with the State of California;

21      • The Court lacks specific jurisdiction because the parties did not intend or expect

22        performance of the purported contract between Plaintiffs and BTTC to take place in

23        California, and because the BTTC Defendants did not "purposefully avail"

24        themselves or direct any activities towards the State of California; and

25      • The exercise of jurisdiction over the BTTC Defendants in this case would not

26        comport with traditional notions of fair play and substantial justice.

27

28

Quintana Law
Group, APC

1   As such, the BTTC Defendants respectfully request that this Court dismiss Plaintiffs'

2   Complaint against them in its entirety without leave to amend pursuant to *Fed. R. Civ. P.* 12(b)(2)

3   for lack of personal jurisdiction over Defendants BTTC and Abreu.

4   Alternatively, even if this Court should find that personal jurisdiction exists over the BTTC

5   Defendants in this District, the Court should still dismiss the Plaintiff's Complaint on *forum non*

6   *conveniens* grounds, since an adequate alternative forum exists, and the balance of private and

7   public interest factors favor dismissal.

8   ## II. **RELEVANT FACTS**

9   This is a dispute wherein Plaintiff Data Mark allegedly performed services for BTTC and

10   Plaintiff Wu allegedly invested money in BTTC, pursuant to a series of purported agreements.

11   Plaintiffs contend that BTTC, as a party to those alleged agreements, and Abreu, as an officer

12   and/or director of BTTC, are both liable to the Plaintiffs for specific monetary amount, have

13   converted Plaintiffs' "Intellectual Property" without properly compensating the Plaintiffs, and

14   further that the BTTC Defendants' actions must be enjoined.

15   In their Complaint, Plaintiffs incorrectly allege that Defendant BTTC was "doing business

16   in California with a principal place of business located in the City of Pleasanton, Alameda County,

17   California." Complaint ¶3. In actuality, Defendant BTTC is a Delaware corporation, with its only

18   principal place of business in Hamden, Connecticut, and BTTC does not and did not conduct

19   business in the State of California, let alone in this District. Abreu Decl., ¶¶4, 8-11, 30.

20   BTTC specializes in the creation of medical applications based on the patented works of

21   Abreu, including the revolutionary Brain Tunnel Temperature technology line, which allows

22   human body temperature to be measured continuously outside the body, just like other vital signs

23   like heart rate, blood pressure and respiratory rate. Abreu Decl., ¶5.

24   The Plaintiffs allege that in 2005 and 2006, the BTTC Defendants made representations to

25   the Plaintiffs, and in response thereto, the Plaintiffs entered into a series of oral agreements with

26   BTTC's purported predecessors in interest whereby the Plaintiffs invested monies and were

27   entitled to receive benefits including shares and a position on the board of directors. Complaint,

28   ¶¶18-19, 23-24. Plaintiffs contend that the promised shares were never issued.

Quintana Law
Group, APC

1   The Plaintiffs also argue that on or about September 15, 2006, Plaintiff Data Mark and

2   Defendant BTTC entered into a written agreement whereby Data Mark was to provide product

3   development and manufacturing services to BTTC.  Complaint, ¶29.  Plaintiffs further contend

4   that the purported agreement was breached because BTTC has allowed other entities to provide

5   the same services (even though Plaintiffs do not claim that purported agreement was exclusive),

6   and as a result, the Plaintiffs were injured. Complaint, ¶33.

7       As set forth below and in the accompanying declaration, nonresident Defendants BTTC

8   and Abreu did not, and do not, have the minimum contacts with the State of California necessary

9   to support the exercise of personal jurisdiction over either of them in this matter.  In particular:

10  • Defendant BTTC is incorporated under the laws of the State of Delaware and has its

11      principal place of business in Hamden, Connecticut.  Abreu Decl., ¶¶3-4, Exhibits

12      "A" and "B";

13  • Defendant BTTC does not maintain, and has never maintained, any offices where it

14      conducted business in the State of California. Abreu Decl., ¶¶8, 10, 30;

15  • Neither Defendants BTTC nor Abreu own any property, personal or real, in the

16      State of California. Abreu Decl., ¶14;

17  • Neither Defendants BTTC nor Abreu own any assets in the State of California.

18      Abreu Decl., ¶15;

19  • Neither Defendants BTTC nor Abreu have paid any taxes in California.  Abreu

20      Decl., ¶16;

21  • Defendant BTTC does not market or sell merchandise in the State of California.

22      Abreu Decl., ¶18;

23  • All of BTTC and Abreu's records related to the acts alleged in Plaintiffs'

24      Complaint, and BTTC employees and managers who may have knowledge of the

25      acts alleged in Plaintiffs' Complaint, are located in or around Hamden,

26      Connecticut. Abreu Decl., ¶29;

27  • Neither Defendants BTTC nor Abreu has consented to litigate this matter in the

28      Northern District of California. Abreu Decl., ¶28;

Quintana Law
Group, APC

- Defendant BTTC's Website – www.braintunnelgenix.com – is passive and informative. Abreu Decl., ¶26, and Exhibit "C" attached thereto;

- Defendant BTTC does not use, and has never used, its Website to distribute, buy, license or sell any products or services, or perform any commercial transactions of any kind (for instance, online transaction processing, electronic date interchange or electronic funds transfers). Abreu Decl., ¶27. No service is, or has ever been, sold or provided through Defendant BTTC's Website. *Id.*

In addition to the general lack of contact with the State of California, the two purported bases for jurisdiction stated in the Complaint, which are asserted without factual support, are also unavailing. For one, the Plaintiffs assert that BTTC had a "principal place of business located" in the State of California. Complaint, ¶3. In fact, there was only one instance where BTTC was provided a delimitated, temporary room by a corporation in Pleasanton, California called Deltatrak, Inc. Abreu Decl., ¶8. However, that space was never a principal place of business for BTTC and lacked the typical and fundamental business accoutrements of an actual, veritable business office, such as a part-time or full-time employees staffing the office or answering phone calls, dedicated telephone line and telephone number to BTTC, business signage, daily conduction of BTTC business and the like. *See* Abreu Decl., ¶¶9-10. Indeed, no written lease was ever signed between Defendant BTTC and Deltatrack, Inc. for this one room. Abreu Decl., ¶9.

Far from a "principal place of business", that Deltatrak, Inc.'s facility space was: (1) never used to interact with BTTC clients or potential clients; (2) never used to sell or market any BTTC products (indeed BTTC did not have products available to sell at the time); (3) never used to transaction with the public; (4) never mentioned or referenced on BTTC's Website; (5) never used to hold regular corporate meetings; and, (6) its location was not advertised or otherwise made available to the public. Abreu Decl., ¶10. Simply put, it was not the place where BTTC's officers directed, controlled, or coordinated the corporation's activities, and instead, that activity took place at the corporate headquarters in Connecticut. Abreu Decl., ¶11.

Likewise, the second alleged basis for jurisdiction in this District is the purported written contract of September 15, 2006: An alleged contract that BTTC has never seen, that was never

communicated by any means to BTTC (not even emails with the clauses sent to Connecticut), that was never approved by BTTC's Board of Directors, and which was conspicuously not attached to the Plaintiffs' Complaint.  Abreu Decl., ¶21.  All investigation done by BTTC indicates that no such written agreement exists.  Even assuming, *arguendo*, some semblance of such a document is somehow provided to the Court, it is not valid or enforceable since it was never sent to Connecticut (where the company is located) nor approved by BTTC's Board of Directors, and thus cannot serve as a basis for jurisdiction over the BTTC Defendants.  Abreu Decl., ¶21.

On these facts, the Court lacks personal jurisdiction over both the BTTC Defendants and Plaintiffs' Complaint should be dismissed in its entirety.

## III. ARGUMENT

### A. THIS COURT LACKS PERSONAL JURISDICTION OVER THE BTTC DEFENDANTS.

*Fed. R. Civ. P.* 12(b)(2) provides for dismissal of an action where the court lacks personal jurisdiction over a defendant.  *See Fed. R. Civ. P.* 12(b)(2).  The plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).  Upon a motion based on affidavits and documentary evidence, the plaintiff has the burden of making a prima facie showing of facts establishing personal jurisdiction.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  A plaintiff must demonstrate "facts that, if true, would support the court's exercise of jurisdiction over the defendant." *Amini Innovation Corp. v. JS Imports, Inc.*, 497 F.Supp.2d 1093, 1100 (C.D. Cal. 2007).  While uncontroverted allegations in the complaint are accepted as true and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor, a *prima facie* showing must be based on affirmative proof beyond the pleadings, such as affidavits, testimony or other competent evidence of specific facts.  *See id.*

The Ninth Circuit applies the following two-step test for determining the propriety of asserting personal jurisdiction: first, the relevant state's long-arm statute must permit jurisdiction; second, the exercise of jurisdiction must be consistent with federal constitutional principles of due process.  *See Pacific Atlantic Trading Co. v. M/V Main Express*, 758 F.2d 1325, 1327 (9th Cir.

1   1985); *Greenspun v. Del E. Webb Corporation*, 634 F.2d 1204, 1207 (9th Cir. 1980). The State of

2   California's long arm statute extends jurisdiction to the maximum extent permitted by due

3   process.   Cal. *Civ. P. Code* § 410.10 (West 2008) ("[A] court of this state may exercise

4   jurisdiction on any basis not inconsistent with the Constitution of this state or of the United

5   States."). Thus, because California's long-arm jurisdictional statute is coextensive with federal due

6   process requirements, only a single analysis is necessary. *Yahoo! Inc. v. La Ligue Contre Le*

7   *Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006).

8        The Fourteenth Amendment's Due Process Clause permits personal jurisdiction over any

9   defendant that has sufficient "minimum contacts" with the forum state such that the exercise of

10   jurisdiction "does not offend traditional notions of fair play and substantial justice." *International*

11   *Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). There are two

12   recognized bases for exercising personal jurisdiction over a non-resident defendant: (1) "general

13   jurisdiction," which arises when the defendant's activities in the forum are sufficiently

14   "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over it in all

15   matters; and (2) "specific jurisdiction," which arises when a plaintiff can establish that the present

16   claims arose directly from defendant's California-related activities. *See Helicopteros Nacionales*

17   *de Colombia S.A. v. Hall*, 466 U.S. 408, 414-16, 104 S.Ct. 1868, 1872-73, 80 L.Ed. 2d 404 (1984).

18        In this case, neither of the BTTC Defendants has "continuous and systematic contacts"

19   with the State of California that would support general jurisdiction, nor do either of them have

20   contacts with the State of California that would establish specific jurisdiction in this state for the

21   alleged injuries sued on by Plaintiff.

22        *1.  The BTTC Defendants Do Not Have "Continuous and Systematic Contacts" With*
         *The State Of California Sufficient To Support General Jurisdiction.*
23

24        General jurisdiction exists where a non-resident defendant has "substantial" or "continuous

25   and systematic" contacts in the State that "approximate physical presence." *Bancroft & Masters,*

26   *Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). The Ninth Circuit has held that

27   general jurisdiction is "disfavored," "unusual" and may be exercised in "rare" instances where the

28   defendant's activities in the forum state are so pervasive and so much greater than those in other

Quintana Law
Group, APC

9

1    States.  *See, e.g., Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851 n.3 (9th Cir.

2    1993)(citing cases; noting that the U.S. Supreme Court has upheld general jurisdiction only

3    once); *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993); *Intel Corp. v. Silicon*

4    *Storage Tech., Inc.*, 20 F.Supp.2d 690, 699 (D.Del. 1998). Further, the Ninth Circuit has held that

5    the requirements for general jurisdiction are "an exacting standard, as it should be, because a

6    finding of general jurisdiction permits a defendant to be haled into court in the forum state to

7    answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801.  For

8    these reasons, the threshold question in a general jurisdiction case is higher and more

9    demanding than that required in a specific jurisdiction case and the courts have "evinced a

10   reluctance to assert general jurisdiction over nonresident . . . corporations even when the contacts

11   with the forum state are quite extensive." 16 Moore's Federal Practice § 108.41 [3] (3d ed.

12   1997); *see also Amoco Egypt Oil*, 1 F.3d at 851, n.3.

13           The evidence shows that the BTTC Defendants are not located in the State of California,

14   do not have offices in the State of California, own no property in the State of California, have only

15   limited contact with the State of California, and have never marketed toward the State of

16   California. Abreu Decl., ¶¶13-19. As stated above, Defendant BTTC is incorporated in the State

17   of Delaware, and has its principal place of business and corporate headquarters in Hamden,

18   Connecticut.  Abreu Decl., ¶¶3-4.  The BTTC Defendants do not currently maintain any other

19   offices in the United States outside of Connecticut. Abreu Decl., ¶13.  The BTTC Defendants do

20   not pay taxes in the State of California. Abreu Decl., ¶16.  Further, the BTTC Defendants activities

21   with the State of California are limited to their contacts with the Plaintiffs themselves.  Abreu

22   Decl., ¶22.  The limited contact with California entities does not warrant a finding of general

23   jurisdiction over a nonresident. *See Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir.

24   1986)(finding that occasional sales to California residents, and sales to a dealer that defendant

25   knew would resell in California were insufficient to support general jurisdiction); *see also,*

26   *Cubbage v. Merchent*, 744 F.2d 665, 667-68 (9th Cir. 1984)(finding no general jurisdiction in

27   California over defendant hospital where 16 of its 87 employees and 26 percent of its patients

28   were residents of California and where defendant advertised in telephone directory distributed in

Quintana Law
Group, APC

1    California, applied for and was issued California Medi-Cal numbers for its doctors, and received

2    reimbursement from California for patients covered under the MediCal program.)

3        While Defendant BTTC maintains a Website, www.braintunnelgenix.com, it is passive and

4    informational, and does not give rise to general jurisdiction in this state. Abreu Decl., ¶¶26-27.

5    BTTC has been using that Website for less than one year. Abreu Decl., ¶26. To create an

6    expectation of being haled into court here, the defendant's contacts with the forum state generated

7    by a Website must be more than random, fortuitous, or attenuated. *See Snowney v. Harrah's*

8    *Entertainment, Inc.*, 35 Cal.4th 1054, 1063 (2005). A Website that may reach California residents

9    does not support jurisdiction where it merely provides information for interested parties. *See*

10   *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997)(holding that a passive Website

11   that does not allow the consummation of business does not qualify as meaningful contacts with a

12   forum state giving rise to personal jurisdiction over a defendant in a trademark action); *see also*

13   *Mink v. AAAA Development LLC*, 190 F.3d 333, 337 (5th Cir. 1999) (finding that a Website that is

14   nothing more than a "passive advertisement," i.e. a Website that provides product information,

15   toll-free telephone numbers, e-mail addresses, mail addresses, and mail-in order forms, does not

16   support the exercise of personal jurisdiction).

17       The uncontroverted evidence shows that Defendant BTTC's Website is merely informative

18   and thus passive under the standards discussed in *Cybersell* and *Mink*. BTTC's Website contains

19   only: (1) information regarding BTTC's business purpose, management, and history; (2)

20   information regarding the kinds of goods and technologies that BTTC produces; and (3) the

21   contact information for BTTC's offices in Connecticut. Abreu Decl., ¶26. Defendant BTTC does

22   not use, and has never used, its Website to distribute, buy, license or sell any products or services,

23   or perform any commercial transactions of any kind (for instance, online transaction processing,

24   electronic date interchange or electronic funds transfers). Abreu Decl., ¶27. No service is, or has

25   ever been, sold or provided through the Website. *Id.*

26       Moreover, as the Ninth Circuit has found, a company cannot merely be doing business

27   "with" individuals in the State but must be doing business "in" the State before general

28   jurisdiction can apply. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarian Co.*, 284 F.3d

Quintana Law
Group, APC

1   114 (9th Cir. 2002).  For instance, in *Brand v. Menlove Dodge*, 796 F.2d 1070 (9th Cir. 1986), the

2   Ninth Circuit held that a nonresident's contacts with the forum were neither "substantial" nor

3   "systematic and continuous" when they included (1) occasional car sales to forum residents; (2)

4   occasional car sales to another car dealer with knowledge that the car dealer would resell the cars

5   to forum residents; and, (3) entry through forum ports of vehicles that nonresident defendant sold.

6   　　Since the only California residents Defendant BTTC did business with were the Plaintiffs, this

7   is obviously a situation where BTTC did business *with* California, not *in* California.

8   　　In *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984), the Ninth Circuit found

9   that general jurisdiction did not exist despite nonresident defendant's (1) solicitation and

10  negotiation of agreement in forum state; (2) several visits to forum state; (3) arrangement of an

11  aircraft sale in forum state; (4) attendance at a conference in forum state; (5) delivery of several

12  aircraft in forum state; (6) significant communication by telephone and facsimile with forum; and (7)

13  forum-selection clause favoring forum in negotiated airplane purchase agreement.

14  　　As these cases demonstrate, the exercise of general jurisdiction over Defendant BTTC in

15  this matter would obliterate both the territorial limits on jurisdiction over nonresident Defendants

16  and the settled law dictating the "disfavored," "rare" and "unusual" availability of general

17  jurisdiction.  The carefully constructed jurisdictional limits would be rendered meaningless, and

18  California's court system would potentially be burdened with a flood of cases having nothing to do

19  with the State of California.  To exercise general jurisdiction over the BTTC Defendants in this

20  case would open the doors of the State of California courts to *every* case regardless of nature or

21  type.  Such a result here, as well as in the future, would be unwise, unwarranted, and

22  unconstitutional.

23  　　Even Plaintiffs' contention that BTTC had an office within the District is unavailing, since

24  that office was actually located within Deltatrak, Inc's offices, and its sole purpose was to

25  facilitate interaction between Deltatrak, Inc. and BTTC, and not to do business with the public.

26  Abreu Decl., ¶¶9-10.  Nor did Defendant BTTC ever do business from that office or hold that

27  office out to the public as a place of business.  Abreu Decl., ¶10.

28  　　While Plaintiffs contend that BTTC had a "primary place of business" in California, recent

Quintana Law
Group, APC

1   U.S. Supreme Court authority demonstrates that the office in question does not fit that description.

2   In *Hertz Corp. v. Friend*, --- U.S. ----, ----, 130 S.Ct. 1181, 1184, --- L.Ed.2d ----, ---- (2010), the

3   Court found that the

> "[P]rincipal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. In practice it should normally be the place where the corporation maintains its headquarters-provided that the headquarters is the actual center of direction, control, and coordination, i.e., the "nerve center," and not simply an office where the corporation holds its board meetings.

7   Here, BTTC's corporate headquarters are located in Connecticut (Abreu Decl., ¶¶4, 11, 30), and

8   those headquarters are center of direction, control and coordination for BTTC.  Abreu Decl., ¶11.

9   Plaintiffs are simply wrong in their assertion that BTTC ever had its principal place of business in

10  this District, or in California at all.

11          The crux of Plaintiffs' claims is the alleged breach by Defendants of the purported

12  contract between the parties, and the control of certain technologies related thereto.  Plaintiffs

13  do not, and could not, assert that BTTC was doing business with the public in the State of

14  California.  Instead, jurisdiction here boils down to the Plaintiffs seeking to bring claims in the

15  State of California based solely on *Plaintiffs'* possession of an office in this State, and there is

16  simply no evidence of any continuous or systematic presence in the State of California that could

17  give rise to general jurisdiction over BTTC, let alone Abreu.

18          **2.    *The BTTC Defendants Do Not Have The Contacts With The State Of California***
            ***That Would Establish Specific Jurisdiction Over the BTTC Defendants In This Case.***

19

20          If a non-resident's actions do not create general jurisdiction, a defendant may still be

21  subject to "specific jurisdiction" on claims based on its activities or contacts in the forum.  *Yahoo!*

22  *Inc.*, 433 F.3d at 1205.  In assessing specific jurisdiction, the Ninth Circuit uses a three-prong

23  analysis: 1) defendant must do some act or consummate some transaction in California by which it

24  purposefully avails itself of or directs its activities toward residents of the state; 2) plaintiff's

25  claims must arise out of or result from defendant's California-related activities; and 3) California's

26  exercise of jurisdiction must be reasonable.  *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir.

27  2001).  "If any of the three requirements is not satisfied, jurisdiction in the forum would

28  deprive the defendant of due process of law."  *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52

Quintana Law
Group, APC

1   F.3d 267, 270 (9th Cir. 1995). Whether specific jurisdiction exists "turns on an evaluation of the

2   nature and quality of the defendant's contacts in relation to the cause of action." *Unocal Corp.*,

3   248 F.3d at 922. In contract related cases, the courts have emphasized that the most important

4   factor for determining specific jurisdiction is often where the parties intend for performance of a

5   contract to take place. *See Stone v. Texas*, 76 Cal.App.4th 1043, 1047-50 (1999).

   **a. The BTTC Defendants Have Not Purposefully Availed Themselves Of, Or
   Directed Activities Towards, The State Of California.**

8       The purposeful availment portion of the specific personal jurisdiction test can be met by

9   the purposeful direction of a foreign act having effect in the forum state. *CE Distrib., LLC v. New

10  Sensor Corp.*, 380 F.3d 1107, 1111 (9th Cir. 2004). This "effects test" is satisfied if defendant

11  "(1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3)

12  caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered

13  in the forum state." *Bancroft & Masters, Inc.*, 223 F.3d at 1087.

14      As described above, there is a paucity of evidence supporting any minimum contacts by

15  the BTTC Defendants with the State of California in relation to the Plaintiffs' causes of action.

16  The uncontroverted evidence shows that the BTTC Defendants are not located in the State of

17  California, did not and do not have offices in the State of California, own no property in the State

18  of California, do not transact business in the State of California, and never marketed specifically

19  toward the State of California. Abreu Decl., ¶¶13-20.

20      Further, where, as here, a plaintiff is claiming breach of a purported contract, the essential

21  analysis for jurisdiction is the intent of the parties at the time of the alleged contract:

22          "Purposeful availment" requires that the defendant "have
            performed some type of affirmative conduct which allows or
23          promotes the transaction of business within the forum state."
            [Citation.]  A contract with an out-of-state party does not
24          automatically establish purposeful availment in the other
            party's home forum.  [Citation.]  Rather, a court must
25          evaluate   the   contract   terms   and   the   surrounding
            circumstances   to   determine   whether   the   defendant
26          purposefully established minimum contacts within the forum.
            Relevant factors include prior negotiations, contemplated
27          future consequences, the parties' course of dealings, and the
            contract's choice-of-law provision. [Citation.]"
28

Quintana Law
Group, APC

1
2    *Goehring v. Superior Court* (1998) 62 Cal.App.4th 894, 907, *citing Burger King Corp. v.*
3    *Rudzewicz* (1985) 471 U.S. 462, 478-482, 105 S.Ct. 2174, 2185-2187, 85 L.Ed.2d 528.
4          The Plaintiffs aver that they entered into a series of oral agreements with the BTTC
5    Defendants, each of which related to the governance of BTTC in Connecticut, and a single written
6    contract between Data Mark and BTTC, but has provided no documentation of any such written
7    contract, let alone and such a contract with a reference to the State of California.
8          Further, the parties never contemplated, intended or expected that any harm arising under
9    any of the alleged agreements would arise in the State of California. Abreu Decl., ¶24. Instead,
10   the performance of the alleged oral agreements would have occurred in Connecticut, at BTTC's
11   corporate headquarters, since the terms related to the ownership of shares and participation in the
12   management of BTTC. Complaint, ¶¶18-19, 23-24. Likewise, the manufacturing of BTTC
13   products allegedly participated in by Plaintiff Wu regardless of whether it was supposed to occur
14   under the undisclosed and unratified written agreement or otherwise, was going to take place in
15   the People's Republic of China, not the State of California. Abreu Decl., ¶25.
16         The U.S. Supreme Court has determined that a defendants' conduct must be "expressly
17   aimed" at the forum state in which the harm occurred to give rise to personal jurisdiction. *Calder*
18   *v. Jones*, 465 U.S. 783, 788-89, 104 S.Ct. 1482, 1486-87, 79 L.Ed. 2d 804 (1984). Plaintiffs
19   cannot show any action of the BTTC Defendants which was "expressly aimed" at the State of
20   California and as such, the locality of the alleged harm was suffered is irrelevant to the
21   jurisdictional analysis. Further, even if it were relevant, it appears that any alleged harm (if at all)
22   occurred in Connecticut, not California at all.
23         Without any evidence of a conduct expressly aimed at the State of California, there is
24   simply no basis for personal jurisdiction over the BTTC Defendants in this matter.
25            **b.  The BTTC Defendant's Alleged Contacts With The State Of California**
                 **Are Not A "But For" Cause Of Plaintiffs' Alleged Claims.**
26         To demonstrate that a plaintiff's cause of action arises out of or results from defendant's
27   forum-related contacts, plaintiff must show that "but for" defendant's contacts with the forum
28   state, its claims would not have arisen. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995); *see*

Quintana Law
Group, APC

1   *also Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarian*, 284 F.3d 1114, 1123 (9th Cir.

2   2002).

3       Plaintiffs not only fail to meet this standard, they fail to allege or identify a single act or

4   omission by the BTTC Defendants in the State of California that "but for" their performance or

5   nonperformance the Plaintiffs would have no claim.   There is simply no nexus between any "in

6   forum" conduct by the BTTC Defendants and the facts and events which allegedly give rise to

7   Plaintiffs' claims.

8       Plaintiffs' claims are based on the alleged breach of the purported oral and written

9   contracts related to specific corporate governance and technology consultation issues.   Thus,

10   the acts which caused the alleged harm (*i.e.* the breach of the purported contracts, related to

11   governance of a corporation located solely in Connecticut), did not arise from the BTTC

12   Defendants' forum related activities.   Further, Plaintiffs' allegations regarding Defendant

13   BTTC's alleged breach of a written contract also fail the 'but for' test, as the development and

14   manufacturing services allegedly provided thereunder took place primarily in the People's

15   Republic of China and the alleged breach was allowing a company in *Iowa* (*i.e.*, Defendant

16   Titronics Research & Development Co., Inc.) to supposedly manufacture BTTC's goods.

17   Complaint, ¶87; Abreu Decl., ¶25.

18         **c.  Exercising Personal Jurisdiction Over Either Of The BTTC Defendants In**

19                  **The State of California Would Be Unreasonable.**

20       The third part of the Ninth Circuit's test for specific personal jurisdiction requires that

21   personal jurisdiction over the defendant must "comport with traditional notions of fair play and

22   substantial justice." *Yahoo! Inc.*, 433 F.3d at 1205; *see also Unocal Corp.*, 248 F.3d at 925 ("The

23   bare existence of minimum contacts is not sufficient to allow a court to exercise personal

24   jurisdiction over a defendant."). The U.S. Supreme Court has enumerated five factors to consider

25   when determining whether the exercise of personal jurisdiction is reasonable and fair under the

26   circumstances. *Asahi Metal Industry Co., Ltd. v. Superior Court*, 480 U.S. 102, 113, 107 S.Ct.

27   1026, 1032, 94 L.Ed. 2d 92 (1987). These five factors include: 1) the burden that the exercise of

28   jurisdiction will impose on the defendant; 2) the interests of the forum state in adjudicating the

Quintana Law
Group, APC

1  case; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial

2  system's interest in obtaining the most efficient resolution of the controversy; and 5) the shared

3  interest of the states in furthering substantive social policies. *Id.* at 113-14.

4       Even assuming *arguendo* that minimum contacts necessary for personal jurisdiction could

5  be established, which they could not, the *Asahi* factors do not support personal jurisdiction in the

6  present case. The exercise of jurisdiction in the State of California would create a great burden on

7  the BTTC Defendants, an individual Connecticut resident and a Connecticut business with no

8  offices, employees or records in California. Abreu Decl., ¶29. While the State of California has a

9  general interest in a dispute which involves one of its citizens, its interest here is outweighed by

10  that of Connecticut, where the defendant are located, and where the breach of the promises to

11  Plaintiffs allegedly took place. Complaint, ¶¶62, 68.

12       Moreover, no efficiency is achieved for the judicial system or the parties because all of

13  BTTC's and Abreu's documents and evidence are located in the State of Connecticut, as are

14  BTTC's employees and managers who may have information related to this dispute. Abreu Decl.,

15  ¶29. Finally, the shared interest among the states in furthering social policies does not favor

16  adjudication of this dispute in California over Connecticut. Again, while California may have a

17  general interest here, Connecticut has a stronger interest in adjudicating a dispute between these

18  parties. Further, the paramount social policy that must be furthered in this case is the stringent

19  requirements of Due Process which mandate that this matter be dismissed for lack of personal

20  jurisdiction.

21       The Northern District conducted a similar analysis on a motion to transfer venue in *Biswas*

22  *v. HR Value Group, LLC*, 2002 WL 31261160 (N.D.Cal. 2002). In *HR Value Group*, a California

23  resident sued his former Wisconsin employer in California for wrongful termination. In granting

24  the defendant's motion to transfer venue, the court found that several factors weighed in favor of

25  adjudicating this case in Wisconsin over California. In analyzing the convenience of witnesses,

26  the court held that "[t]his factor weighs heavily in favor of transfer. All of defendants' witnesses

27  reside in Wisconsin, Illinois and some eastern states." *Id.* at 2. Next the court turned to the factor

28  of access of evidence, and found that "[t]his factor weighs in favor of transfer as most of the

Quintana Law
Group, APC

1   relevant evidence is located in Wisconsin.   The relevant documents pertaining to plaintiff's

2   employment with [defendant] HR Value are located at HR Value offices in Middleton,

3   Wisconsin." *Id.* at 3.  Similarly, the court found that Wisconsin state law would apply because

4   "HR Value was formed in Wisconsin, the employment relationship commenced in Wisconsin, the

5   alleged discrimination and conversion occurred in Illinois, and plaintiff was terminated in

6   Wisconsin . . . ." *Id.*

7          Turning to the interest of the states in adjudicating the case, the Northern District found

8   that "[t]his factor weighs heavily in favor of transferring since the interest of California in

9   adjudicating this case is limited."  The court noted that while California does have a general

10  interest in its citizens, "[t]his case is about employment with a Wisconsin corporation that

11  occurred in Wisconsin and Illinois.   *Wisconsin has a greater interest in ensuring that its*

12  *corporations comply with its laws than does California . . . .*" *Id.* (emphasis added).

13         Here, as in *HR Value Group*, the BTTC Defendants' witnesses and relevant documents are

14  located in Connecticut, the BTTC Defendants are an individual resident of Connecticut and a

15  Connecticut corporation with its principal place of business in Connecticut, and all actions taken

16  by the BTTC Defendants in relation to the purported contracts occurred in Connecticut.  Further,

17  Connecticut has a greater interest in adjudicating this case to ensure that Defendant BTTC, a

18  corporation doing business within its jurisdictional boundaries, is complying with its laws.

19         The burdens and inefficiencies attendant to preparation for and trial of this matter in the

20  State of California, as well as the greater interest of the State of Connecticut in adjudicating this

21  dispute, weigh heavily against this Court's exercise of personal jurisdiction over the Defendants.

22      ***3.   Defendant Marcio Abreu Should Be Dismissed As No Allegations Were Made To***
23      ***Support Jurisdiction Over Him Personally.***

24         There is simply no basis for personal jurisdiction over Defendant Marcio Abreu in the

25  State of California, and indeed Plaintiffs fail to offer any basis.  As stated above, Defendant

26  Abreu is a resident of the State of Connecticut, and has been living there since 1999.  Abreu

27  Decl., ¶2.  As the Chief Scientific Officer of BTTC, Abreu is employed in Connecticut, and

28

Quintana Law
Group, APC

18

1   intends to remain in Connecticut.   Abreu Decl., ¶2-4.   Abreu has never been a resident of
2   California, and does not regularly travel to California for business purposes.   Abreu Decl., ¶2.

3       In their Complaint, Plaintiffs concede that Defendant Abreu is a Connecticut resident
4   (Complaint, ¶5), but do not make a single allegation which would warrant jurisdiction over
5   Defendant Abreu individually in California.   Indeed, Plaintiffs do not allege that they entered into
6   a business relationship with Abreu individually.   Further Plaintiffs do not allege any contacts or
7   activities by Defendant Abreu in the State of California, and indeed there are none.

8       Plaintiffs apparently assume, mistakenly, that simply because they reside in California,
9   jurisdiction over Defendant Abreu is warranted in this State.   Given the complete lack of factual
10  allegations to warrant jurisdiction over Defendant Abreu in the State of California, Defendant
11  Abreu should be dismissed from all claims asserted against him.

12  **B. THE COURT SHOULD DISMISS THIS ACTION ON THE BASIS OF <u>FORUM NON</u>**
13     **<u>CONVENIENS</u>.**

14      *Forum non conveniens* is a common law doctrine that allows a court to dismiss an action –
15  even though it technically has jurisdiction over the claims – because the action would be more fairly
16  and conveniently litigated elsewhere. *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th
17  Cir. 2001) ("A district court has discretion to decline to exercise jurisdiction in a case where
18  litigation in a foreign forum would be more convenient for the parties.").   Under the doctrine of
19  *forum non conveniens*, a court must determine whether an adequate alternative forum exists and must
20  weigh various private and public interest factors to evaluate whether a *forum non conveniens*
21  dismissal would serve the interests of justice. *See, e.g., Piper Aircraft Co. v. Reyno*, 454 U.S. 235,
22  102 S.Ct. 252, 70 L.Ed. 2d 419 (1981). A *forum non conveniens* determination is committed to
23  the discretion of the district court and will not be disturbed absent a finding of clear abuse of
24  discretion. *See Lueck,* 236 F.3d at 1143 (affirming district court's dismissal of action based on
25  *forum non conveniens* where foreign plaintiffs' claims arose from an airplane crash in New
26  Zealand).

27      The Ninth Court utilizes a two-part test to determine whether dismissal is proper. First, the
28  Court considers whether an adequate alternative forum exists.   Second, the Court determines

1  that "the balance of private and public interest factors favor [ ] dismissal." *Dole Food Co. v. Watts*,

2  303 F.3d 1104, 1118 (9th Cir. 2002). "[W]here the court has considered all relevant public and

3  private interest factors, and where its balancing of these factors is reasonable," its decision to

4  dismiss a case on *forum non conveniens* grounds deserves substantial deference. *Lueck*, 236 F.3d at

5  1143.

6      Examination of the private and public factors compels dismissal on *forum non conveniens*

7  grounds where, in this case, the place where Plaintiffs' causes of action accrued (*i.e.,* the State of

8  Connecticut) unquestionably provides an adequate alternative forum.

9      *1.  The United States District Court For Connecticut Provides An Adequate Alternative Forum.*

10

11  As to the first factor, the Ninth Circuit has stated that a foreign forum is adequate when it

12  provides the plaintiff with a sufficient remedy for its alleged wrong. *See Dole Food*, 303 F.3d at

13  1118. Indeed, "it is only in 'rare circumstances . . . where the remedy provided by the alternative

14  forum . . . is so clearly inadequate or unsatisfactory, that it is no remedy at all.'" *Lueck*, 236 F.3d

15  at 1143 (citations omitted). In *Piper Aircraft*, where the plaintiffs were seeking damages for

16  injuries suffered as a result of an airplane crash in Scotland, the U.S. Supreme Court held that

17  Scotland was not an inadequate forum merely because its laws offered the plaintiff a lesser remedy

18  than he could expect to receive in the United States. The Ninth Circuit has held that "[t]he effect

19  of *Piper Aircraft* is that a foreign forum will be deemed adequate unless it offers no practical remedy

20  for the plaintiff's complained of wrong." *Lueck*, 236 F.3d at 1144.

21  It is incontrovertible that the United States District Court for Connecticut would provide the

22  Plaintiffs with adequate laws and remedies.

23      *2.  The Private And Public Interests Weigh Heavily In Favor Of Dismissal On The Grounds Of* Forum Non Conveniens*.*

24  The second step of the *forum non conveniens* analysis focuses on whether the balance of

25  relevant private and public interests tips in favor dismissal. *See Dole Food*, 303 F.3d at 1119.

26  "Private interests" of the litigants include (1) the residence of the parties and the witnesses, (2)

27  the forum's convenience to the litigants, (3) the ease of access to proof, (4) the availability of

28  compulsory process for attendance of unwilling witnesses, (5) the cost of obtaining attendance of

Quintana Law
Group, APC

1    willing witnesses, the likelihood of a fair trial, and (6) "all other practical problems that make trial

2    of a case easy, expeditious and inexpensive." *Lueck*, 236 F.3d at 1145; *see also Dole Food*, 303

3    F.3d at 1119.

4        "Public interests" factors include (1) court congestion, (2) the court's familiarity with the

5    governing law, (3) the burden on the court and local juries, (4) local interest in resolving the

6    controversy, and (5) the costs involved in resolving a dispute unrelated to the forum. *See Lueck*,

7    236 F.3d at 1147; *see also Dole Food*, 303 F.3d at 1119.

8        As described below, an assessment of both the private and public interests strongly suggests

9    that dismissal of this matter in favor of the United States District Court for Connecticut is

10   appropriate.

11              **a.  Private Interests Favor The Connecticut Judicial System.**

12       The relevant private interests of the parties to this matter weigh in favor of the United

13   States District Court for Connecticut as the more appropriate forum, and vague allegations by

14   the Plaintiff of contacts with the State of California do not tip the balance in its favor.  In fact,

15   any witnesses and evidence supplied by the BTTC Defendants would be located outside of the

16   State of California.  Little if any relevant evidence is located in the State of California.

17       In sharp contrast, however, most of the evidence necessary and crucial for the defense of

18   this action is located in the State of Connecticut and is not readily accessible to the BTTC

19   Defendants in California. For example, to defend against Plaintiffs' breach of contract claims,

20   BTTC Defendants will require access to documentary evidence in Connecticut related to the

21   complained-of oral and written agreements.  It is also important to note that all of the employees of

22   the Defendants, including those employees and managers that may have knowledge of the alleged

23   breaches, reside in or around Hamden, Connecticut.  Abreu Decl., ¶29. Compelling such witnesses

24   to testify in federal court in California will be prohibitively expensive.  The breach of contract

25   allegations require fact intensive discovery in Connecticut and weigh heavily against maintaining this

26   action in California.

27       Because so much of the evidence necessary to litigate this action is located or available in

28   Connecticut and virtually none of it is located in California, the private interests of the parties

Quintana Law
Group, APC

1    weigh heavily in favor of Connecticut as the appropriate forum for this lawsuit.

2                    **b.  Public Interests Also Weigh In Favor Of Connecticut.**

3          Plaintiffs purport to ask a California jury to sit in judgment on BTTC Defendants' interactions

4    in the State of Connecticut.  Why a California jury should be so engaged when the United States

5    District Court for Connecticut has an adequate and available justice system is unfathomable.

6    Moreover, just as it is fundamentally unfair to bring BTTC Defendants into a forum having no

7    jurisdiction to adjudicate the matter, it is equally unfair to the public interest of the State of

8    Connecticut that it not be permitted to hear and resolve this case involving alleged acts occurring

9    with its borders.  That is particularly true when Plaintiffs' alleged injuries took place in the State

10   of Connecticut.  The United States District Court for Connecticut has far more interest in hearing

11   the present case.

12         Furthermore, it is in the interest of this Court that this case be dismissed in favor of the

13   United States District Court for Connecticut.  This case would command considerable judicial time

14   and resources given the practical and procedural problems summarized above.  Litigation of

15   this matter will require extensive discovery from the State of Connecticut which could take an

16   extended period of time to complete.  As mentioned, non-California witnesses' resistance to

17   compliance with all subpoenas *duces tecum* or a subpoena *ad testificandum* could require

18   significant costs in terms of time and money to the parties as well as the Court, and such

19   witnesses may be beyond this Court's compulsory process.  At the same time, California has

20   little if any interest in this dispute and it would unnecessarily burden an already burdened court.

21   *See Cheng v.  Boeing Co.,* 708 F.2d 1406 (9th Cir. 1983) ("[C]ourts may validly protect their

22   dockets from cases which arise within their jurisdiction, but which lack significant connection to

23   it . . . [and] legitimately encourage trial of controversies in the localities in which they arise. . . .").

24         As the foregoing demonstrates, should discovery and trial in this action take place in

25   California, the extensive logistics to be addressed and their attendant burdens and inefficiencies

26   weigh heavily in favor of dismissing this action on the grounds of *forum non conveniens.*

27

28

Quintana Law
Group, APC                                                22

1

## IV.   CONCLUSION

2  For the reasons stated above, the BTTC Defendants respectfully requests that this Court

3  grant Defendants Marcio Abreu and Brain Tunnelgenix Technologies Corp.'s motion to dismiss this

4  action for lack of personal jurisdiction over Defendant pursuant to *Federal Rule of Civil Procedure*

5  12(b)(2), and grant such further relief as the Court deems appropriate.

6

7  DATED: December 29, 2010                QUINTANA LAW GROUP
                                           A Professional Law Corporation
8

9

10                                         By:   _____

11                                               Andres F. Quintana, Esq.
                                                 John M. Houkom, Esq.
12                                               Attorneys For Defendants Brain Tunnelgenix
                                                 Technologies Corp., Marcio Abreu, Joseph
13                                               Titone, and Titronics Research & Development
                                                 Co., Inc.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Quintana Law
Group, APC

1

## DECLARATION OF MARCIO ABREU

2  I, MARCIO AURELIO MARTINS ABREU, declare and state as follows:

3  1.  I am a resident of the State of Connecticut, and over the age of eighteen years
4  old.  I have first-hand, personal knowledge of the facts stated herein, and if called upon as a
5  witness, could and would competently testify thereto.  I am a Defendant in this case, and one of
6  the moving parties.  This declaration is made in support of my and Defendant Brain Tunnelgenix
7  Technologies Corp.'s Motion to Dismiss for Lack of Personal Jurisdiction.

8  2.  I am a resident of the United States, living in the State of Connecticut, and I
9  have lived in Connecticut since 1999.  I have never been a resident of California, and do not
10  regularly travel to California.

11  3.  I am the Chief Scientific Officer of Defendant Brain Tunnelgenix Technologies
12  Corp. ("BTTC") in Connecticut, a corporation formed under the laws of the State of Delaware,
13  and have held that position since 2006. Attached as Exhibit "A" to my declaration is a printout
14  from the State of Delaware's Secretary of State Website reflecting BTTC's incorporation and
15  good standing.

16  4.  BTTC's principal place of business is 375 Mather Street, Hamden, Connecticut
17  06514.  I work in BTTC's only other office, located in Bridgeport, Connecticut, at 250 Myrtle
18  Street, Suite 201, Bridgeport, Connecticut 06604, and intend to remain in Connecticut.  Attached
19  hereto as Exhibit "B" to my declaration are true and correct copies of BTTC's Federal tax returns
20  from inception to the present, redacted to protect confidential information, which reflect the fact
21  that the address of BTTC's corporate headquarters has remained the same throughout its history.

22  5.  BTTC specializes in the creation of medical applications based on patented
23  works, including the Brain Tunnel Temperature technology line, which allows human body
24  temperature to be measured continuously outside the body, just like other vital signs like heart
25  rate, blood pressure and respiratory rate.

26  6.  I am properly authorized to make this Declaration on behalf of BTTC.

27

28

7.      In my capacity as Chief Scientific Officer and a member of the Board of Directors, I am familiar with the identity and mode of preparation of the business and records of BTTC. BTTC's business records are made and kept in a careful and business like fashion.

8.      BTTC does not maintain, and has never maintained, an office in the State of California, except for a small, temporary, interior room located within Deltatrak, Inc's facility in Pleasanton, California that was made available to BTTC (the "Pleasanton Room").

9.      The Pleasanton Room was never BTTC's principal place of business. It lacked a dedicated telephone line solely for BTTC's use. There was never any business signage inside or outside the Pleasanton building and BTTC never staffed that Room with any full-time or part-time employees. BTTC never signed any written lease in connection with the Pleasanton Room and BTTC's Board of Directors has never approved of any such lease. If a lease had been drafted, I would be the one on behalf of BTTC to sign it.

10.      Moreover, the Pleasanton Room was: (1) never used to interact with BTTC clients or potential clients, (2) never used to sell or market any BTTC products, (3) never used to transaction with the public, (4) never mentioned or referenced on BTTC's Website; (5) never used to hold any regular directors' meetings; (6) never used to hold regular corporate meetings; (7) never used to distribute payroll checks; and (8) and its location was not never advertised or otherwise made available to the public or listed in any directory or phone book.   Put simply, the Pleasanton Room was not equipped to serve as BTTC's place of business.

11.      The Pleasanton Room was not the place where BTTC's officers directed, controlled, or coordinated the corporation's activities, and instead, that activity took place at the corporate headquarters in Connecticut.

12.      I never worked out of the Pleasanton Room. To my knowledge, no members of the Board of Directors of BTTC worked out of the Pleasanton Room.

13.      BTTC does not currently have any offices outside of the State of Connecticut. Further, BTTC does not have any plans or intentions to set-up or open an office in the State of California.

14.      Neither I nor BTTC own or possess, or has ever owned or possessed, any

Quintana Law
Group, APC

25

1    interest in any property located in the State of California.

2        15.     Neither I nor BTTC own any assets in the State of California.

3        16.     Neither I nor BTTC pay any taxes in the State of California.

4        17.     BTTC has not applied for or obtained a California business license.

5        18.     BTTC does not directly market any of its goods to the State of California, does

6    not regularly conduct business with the State of California, and does not transact any business

7    within the State of California.

8        19.     BTTC does not market or sell merchandise in the State of California.

9        20.     Neither I nor BTTC engage in political activity in the State of California

10       21.     The Complaint further alleges that on or about September 15, 2006, Data Mark

11   and BTTC entered into a written agreement whereby Data Mark was to provide product

12   development and manufacturing services to BTTC.  BTTC, however, has no record of any such

13   written contract or other written agreement between BTTC and Data Mark, nor was any such

14   agreement approved by BTTC's Board of Directors.

15       22.     BTTC's activities with the State of California are limited to their contacts with

16   the Plaintiffs.

17       23.     My activities with the State of California are limited to my contacts with the

18   Plaintiffs.

19       24.     Neither I nor BTTC contemplated, intended or expected that any harm arising

20   under any of the alleged agreements would arise in the State of California.

21       25.     Frederick Wu told me that the manufacturing of BTTC products will take place

22   in the People's Republic of China, not California.

23       26.     BTTC uses and maintains a Website – www.braintunnelgenix.com, which it has

24   been using for less than one year.  I am primarily responsible for overseeing the content of the

25   Website and I know of, and approve all changes made thereto.   The Website is merely

26   informative.   For instance, the Website contains: (1) information regarding BTTC's business

27   purpose, management, awards, partners and quality policy; (2) information regarding the kinds of

28

Quintana Law
Group, APC

1    goods that BTTC produces; and (3) the contact information for BTTC's offices in Connecticut.

2    Attached as Exhibit "C" to my declaration are printouts from BTTC's Website.

3        27.    BTTC does not use, and has never used, its Website to distribute, buy, license or

4    sell any products or services, or perform any commercial transactions of any kind (for instance,

5    online transaction processing, electronic date interchange or electronic funds transfers).    No

6    products are, or have ever been, sold or provided through the Website.

7        28.    BTTC does not consent to litigate this matter in the Northern District of

8    California. I also do not consent to litigate this matter in the Northern District of California.

9        29.    All of my and BTTC's records related to the acts alleged in Plaintiffs'

10   Complaint, and BTTC employees and managers who may have knowledge of the acts alleged in

11   Plaintiffs' Complaint, are located in or around Hamden, Connecticut.

12       30.    Attached as Exhibit "D" to my declaration is an email from Frederick Wu dated

13   May 10, 2006 to Cary Dikeman of Entracare Medical, LLC. In this email, Mr. Wu is instructing

14   Mr. Dikeman to issue a Bill of Sale to BTTC in Connecticut.

15       I declare under penalty of perjury under the laws of the State of California and the United

16   States of America, that the foregoing is true and correct.

17       Executed this ____th day of December, 2010, in Denver, Colorado.

18

19                                  _____

20                                  MARCIO ABREU

21

22

23

24

25

26

27

28

1   goods that BTTC produces; and (3) the contact information for BTTC's offices in Connecticut

2   Attached as Exhibit "C" to my declaration are printouts from BTTC's Website.

3       27.    BTTC does not use, and has never used, its Website to distribute, buy, license or

4   sell any products or services, or perform any commercial transactions of any kind (for instance,

5   online transaction processing, electronic date interchange or electronic funds transfers). No

6   products are, or have ever been, sold or provided through the Website.

7       28.    BTTC does not consent to litigate this matter in the Northern District of

8   California. I also do not consent to litigate this matter in the Northern District of California.

9       29.    All of my and BTTC's records related to the acts alleged in Plaintiffs'

10   Complaint, and BTTC employees and managers who may have knowledge of the acts alleged in

11   Plaintiffs' Complaint, are located in or around Hamden, Connecticut.

12       30.    Attached as Exhibit "D" to my declaration is an email from Frederick Wu dated

13   May 10, 2006 to Cary Dikeman of Entracare Medical, LLC. In this email, Mr. Wu is instructing

14   Mr. Dikeman to issue a Bill of Sale to BTTC in Connecticut.

15       I declare under penalty of perjury under the laws of the State of California and the United

16   States of America, that the foregoing is true and correct.

17       Executed this 29th day of December, 2010, in Denver, Colorado.

18

19

20       MARCIO ABREU

21

22

23

24

25

26

27

28

**DECLARATION OF ANDRES F. QUINTANA**

I, ANDRES F. QUINTANA, declare and state as follows:

1.     I am an attorney licensed to practice law in California and in the Northern District of California and am an attorney at the Quintana Law Group, APC, attorneys for Defendants Brain Tunnelgenix Technologies Corp., Marcio Abreu, Joseph Titone, and Titronics Research & Development Co., Inc. (collectively, the "Defendants"). I have first-hand, personal knowledge of the facts stated herein, and if called upon as a witness, could and would competently testify thereto. This declaration is made in support of Defendants Brain Tunnelgenix Technologies Corp. and Marcio Abreu's Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim.

2.     On or about November 2, 2010, the Plaintiffs Data Mark, Inc. and Frederick L. Wu (collectively, the "Plaintiffs") filed their Complaint in this case. Service of that Complaint was accepted by counsel for the Defendants on December 9, 2010.

3.     By stipulation among the parties, the date for all of the named defendants to respond to the Complaint was December 29, 2010.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this 29 th day of December, 2010, in Calabasas, California.

_____

ANDRES F. QUINTANA

# EXHIBIT A

Delaware.gov | Text Only

Governor | General Assembly | Courts | Elected Officials | State Agencies

## Department of State: Division of Corporations

**HOME**
About Agency
Secretary's Letter
Newsroom
Frequent
Questions
Related Links
Contact Us
Office Location

**SERVICES**
Pay Taxes
File UCC's
Delaware Laws
Online
Name Reservation
Entity Search
Status
Validate
Certificate
Customer Service
Survey

**INFORMATION**
Corporate Forms
Corporate Fees
UCC Forms and
Fees
Taxes
Expedited
Services
Service of Process
Registered Agents
Get Corporate
Status
Submitting a
Request  How to
Form a New
Business Entity
Certifications,
Apostilles &
Authentication of
Documents

Frequently Asked Questions   View Search Results   Summary of Charges   Logout

### Entity Details

| | | | |
|---|---|---|---|
| File Number: | 4111864 | Incorporation Date / Formation Date: | 03/03/2006 (mm/dd/yyyy) |
| Entity Name: | BRAIN TUNNELGENIX TECHNOLOGIES CORP. | | |
| Entity Kind: | CORPORATION | Entity Type: | GENERAL |
| Residency: | DOMESTIC | State: | DE |
| Status: | GOOD STANDING | Status Date: | 03/03/2006 |

### REGISTERED AGENT INFORMATION

| | | | |
|---|---|---|---|
| Name: | CORPORATION SERVICE COMPANY | | |
| Address: | 2711 CENTERVILLE ROAD SUITE 400 | | |
| City: | WILMINGTON | County: | NEW CASTLE |
| State: | DE | Postal Code: | 19808 |
| Phone: | (302)636-5401 | | |

Additional Information is available for a fee of $20.00. This information will include current franchise tax assessment, current filing history and more..

Would you like ○ Tax & History Information [ Submit ]

[ Back to Entity Search ]

To contact a Delaware Online Agent click here.

site map  |  about this site  |  contact us  |  translate  |  delaware.gov

https://delecorp.delaware.gov/tin/controller

12/28/2010

# EXHIBIT B

**Form 1120**
Department of the Treasury
Internal Revenue Service (77)

## U.S. Corporation Income Tax Return
For calendar year 2006 or tax year beginning Mar 3 , 2006, ending Mar 31 , 2006
▶ See separate instructions.

OMB No. 1545-0123

**2006**

| A Check if: | | Name | | B Employer identification number |
|---|---|---|---|---|
| 1 Consolidated return | Use IRS label. Otherwise, print or type. | ETERLINK INTERNATIONAL CORPORATION | | 03-0 |
| 2 Personal holding co | | Number, street, and room or suite number. If a P.O. box, see instructions. | | C Date incorporated |
| 3 Personal service corp (see instructions) | | 375 MATHER STREET | | 03/03/2006 |
| 4 Schedule M-3 required (attach Sch M-3) | | City or town | state ZIP code | D Total assets (see instructions) |
| | | HAMDEN | CT 06514-3101 | $ |

E Check if: (1) ☒ Initial return   (2) ☐ Final return   (3) ☐ Name change   (4) ☐ Address change

**INCOME**

| | | | |
|---|---|---|---|
| 1a Gross receipts or sales | | | |
| b Less returns & allowances | c Balance ▶ | 1c | |
| 2 Cost of goods sold (Schedule A, line 8) | | 2 | |
| 3 Gross profit. Subtract line 2 from line 1c | | 3 | |
| 4 Dividends (Schedule C, line 19) | | 4 | |
| 5 Interest | | 5 | |
| 6 Gross rents | | 6 | |
| 7 Gross royalties | | 7 | |
| 8 Capital gain net income (attach Schedule D (Form 1120)) | | 8 | |
| 9 Net gain or (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | 9 | |
| 10 Other income (see instructions — attach schedule) | | 10 | |
| 11 Total income. Add lines 3 through 10 | ▶ | 11 | |

**DEDUCTIONS (See instructions for limitations on deductions.)**

| | | |
|---|---|---|
| 12 Compensation of officers (Schedule E, line 4) | 12 | |
| 13 Salaries and wages (less employment credits) | 13 | |
| 14 Repairs and maintenance | 14 | |
| 15 Bad debts | 15 | |
| 16 Rents | 16 | |
| 17 Taxes and licenses | 17 | |
| 18 Interest | 18 | |
| 19 Charitable contributions | 19 | |
| 20 Depreciation from Form 4562 not claimed on Schedule A or elsewhere on return (attach Form 4562) | 20 | |
| 21 Depletion | 21 | |
| 22 Advertising | 22 | |
| 23 Pension, profit-sharing, etc, plans | 23 | |
| 24 Employee benefit programs | 24 | |
| 25 Domestic production activities deduction (attach Form 8903) | 25 | |
| 26 Other deductions (attach schedule) | 26 | |
| 27 Total deductions. Add lines 12 through 26 | ▶ 27 | |
| 28 Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11 | 28 | |
| 29 Less: a Net operating loss deduction (see instructions) | 29a | |
| b Special deductions (Schedule C, line 20) | 29b | |
| | 29c | |

**TAX AND PAYMENTS**

| | | |
|---|---|---|
| 30 Taxable income. Subtract line 29c from line 28 (see instructions) | 30 | |
| 31 Total tax (Schedule J, line 10) | 31 | |
| 32a 2005 overpayment credited to 2006 | 32a | |
| b 2006 estimated tax payments | 32b | |
| c 2006 refund applied for on Form 4466 | 32c | d Bal ▶ 32d | |
| e Tax deposited with Form 7004 | 32e | |
| f Credits: (1) Form 2439 | (2) Form 4136 | 32f | |
| g Credit for federal telephone excise tax paid (attach Form 8913) | 32g | 32h | |
| 33 Estimated tax penalty (see instructions). Check if Form 2220 is attached ▶ ☐ | 33 | |
| 34 Amount owed. If line 32h is smaller than the total of lines 31 and 33, enter amount owed | 34 | |
| 35 Overpayment. If line 32h is larger than the total of lines 31 and 33, enter amount overpaid | 35 | |
| 36 Enter amount from line 35 you want: Credited to 2007 estimated tax ▶ | Refunded ▶ 36 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▲ Signature of officer     Date     Title

May the IRS discuss this return with the preparer shown below (see instructions)? ☒ Yes ☐ No

**Paid Preparer's Use Only**

| Preparer's signature ▶ | Date | Check if self-employed ☐ | Preparer's SSN or PTIN P00 |
|---|---|---|---|
| Firm's name (or yours if self-employed), address, and ZIP code ▶ | SOLAKIAN, CAIAFA & COMPANY, LLC | | EIN 06- |
| | 375 MATHER ST | | |
| | HAMDEN          CT 06514-3101 | Phone no. (203) 248-8600 | |

BAA For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.    CPCA0212 07/12/06    Form 1120 (2006)

Redacted

**Form 1120**

Department of the Treasury
Internal Revenue Service (77)

# U.S. Corporation Income Tax Return

For calendar year 2006 or tax year beginning **Apr 1**, 2006, ending **Mar 31**, **2007**
► See separate instructions.

OMB No. 1545-0123

**2006**

A Check if:
1 Consolidated return (attach Form 851) ☐
2 Personal holding co. (attach Sch PH) ☐
3 Personal service corp (see instructions) ☐
4 Schedule M-3 required (attach Sch M-3) ☐

Use IRS label. Otherwise, print or type.

Name
**STERLINK INTERNATIONAL CORPORATION**

Number, street, and room or suite number. If a P.O. box, see instructions.
**375 MATHER STREET**

City or town    state   ZIP code
**HAMDEN**             **CT  06514-3101**

B Employer identification number
**03-**

C Date incorporated
**03/03/2006**

D Total assets (see instructions)
$

E Check if:  (1) ☒ Initial return   (2) ☐ Final return   (3) ☐ Name change   (4) ☐ Address change

| | | | |
|---|---|---|---|
| **I N C O M E** | 1a Gross receipts or sales | b Less returns & allowances | c Balance ► | 1c | |
| | 2 Cost of goods sold (Schedule A, line 8) | | | 2 | |
| | 3 Gross profit. Subtract line 2 from line 1c | | | 3 | |
| | 4 Dividends (Schedule C, line 19) | | | 4 | |
| | 5 Interest | | | 5 | |
| | 6 Gross rents | | | 6 | |
| | 7 Gross royalties | | | 7 | |
| | 8 Capital gain net income (attach Schedule D (Form 1120)) | | | 8 | |
| | 9 Net gain or (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | | 9 | |
| | 10 Other income (see instructions — attach schedule) | | | 10 | |
| | 11 Total income. Add lines 3 through 10 | | ► | 11 | |

| | | |
|---|---|---|
| **D E D U C T I O N S** (See instructions for limitations on deductions) | 12 Compensation of officers (Schedule E, line 4) | 12 |
| | 13 Salaries and wages (less employment credits) | 13 |
| | 14 Repairs and maintenance | 14 |
| | 15 Bad debts | 15 |
| | 16 Rents | 16 |
| | 17 Taxes and licenses | 17 |
| | 18 Interest | 18 |
| | 19 Charitable contributions | 19 |
| | 20 Depreciation from Form 4562 not claimed on Schedule A or elsewhere on return (attach Form 4562) | 20 |
| | 21 Depletion | 21 |
| | 22 Advertising | 22 |
| | 23 Pension, profit-sharing, etc, plans | 23 |
| | 24 Employee benefit programs | 24 |
| | 25 Domestic production activities deduction (attach Form 8903) | 25 |
| | 26 Other deductions (attach schedule) . See Other Deductions Statement | 26 |
| | 27 Total deductions. Add lines 12 through 26 | ► 27 |
| | 28 Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11 | 28 |
| | 29 Less:   a Net operating loss deduction (see instructions) . . . 29a | |
| | b Special deductions (Schedule C, line 20) . . . 29b | 29c |

| | | |
|---|---|---|
| **T A X   A N D   P A Y M E N T S** | 30 Taxable income. Subtract line 29c from line 28 (see instructions) | 30 |
| | 31 Total tax (Schedule J, line 10) | 31 |
| | 32a 2005 overpayment credited to 2006 . . 32a | |
| | b 2006 estimated tax payments . . . . . . 32b | |
| | c 2006 refund applied for on Form 4466 . . 32c   d Bal ► 32d | |
| | e Tax deposited with Form 7004 . . . . . . . . . . . . 32e | |
| | f Credits: (1) Form 2439 . . . (2) Form 4136 . . . 32f | |
| | g Credit for federal telephone excise tax paid (attach Form 8913) . . 32g | 32h |
| | 33 Estimated tax penalty (see instructions). Check if Form 2220 is attached . . . . . ► ☐ | 33 |
| | 34 Amount owed. If line 32h is smaller than the total of lines 31 and 33, enter amount owed | 34 |
| | 35 Overpayment. If line 32h is larger than the total of lines 31 and 33, enter amount overpaid | 35 |
| | 36 Enter amount from line 35 you want: Credited to 2007 estimated tax . . . ►   Refunded ► | 36 |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

May the IRS discuss this return with the preparer shown below (see instructions)? ☒ Yes ☐ No

Signature of officer   Date **12/12/07** ►   Title **PRESIDENT**

**Paid Preparer's Use Only**

| Preparer's signature ► | | Date | Check if self-employed ☐ | Preparer's SSN or PTIN **P00** |
|---|---|---|---|---|
| Firm's name (or yours if self-employed), address, and ZIP code ► | **SOLAKIAN, CAIAFA & COMPANY, LLC**  **375 MATHER ST**  **HAMDEN       CT  06514-3101** | | EIN **06-** | Phone no. **(203) 248-8600** |

BAA For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.      CPCA0212  07/13/06      Form 1120 (2006)

Redacted

33

| Form **1120** | | | U.S. Corporation Income Tax Return | | | | OMB No. 1545-0123 | |
|---|---|---|---|---|---|---|---|---|
| Department of the Treasury Internal Revenue Service | | | For calendar year 2007 or tax year beginning **Apr 1**, 2007, ending **Mar 31**, **2008** ▶ See separate instructions. | | | | **2007** | |

| A Check if: | | | | Name | | | B Employer identification number |
|---|---|---|---|---|---|---|---|
| 1 a Consolidated return (attach Form 851) | ☐ | Use IRS label. | STERLINK INTERNATIONAL CORPORATION | | | | 03- |
| b Life/nonlife consolidated return | ☐ | Otherwise, print or type. | Number, street, and room or suite number. If a P.O. box, see instructions. | | | | C Date incorporated |
| 2 Personal holding co. (attach Sch PH) | ☐ | | 375 MATHER STREET | | | | 03/03/2006 |
| 3 Personal service corp (see instrs) | ☐ | | City or town | | state | ZIP code | D Total assets (see instructions) |
| 4 Schedule M-3 attached | ☐ | | HAMDEN | | CT | 06514-3101 | $ |

| E   Check if: | (1) ☐ Initial return | (2) ☐ Final return | (3) ☐ Name change | (4) ☐ Address change |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| **I N C O M E** | 1a Gross receipts or sales | | b Less returns & allowances . | c Balance ▶ | 1c | |
| | 2 Cost of goods sold (Schedule A, line 8) .............. | | | 2 | |
| | 3 Gross profit. Subtract line 2 from line 1c ............. | | | 3 | |
| | 4 Dividends (Schedule C, line 19) .................. | | | 4 | |
| | 5 Interest ........................... | | | 5 | |
| | 6 Gross rents ......................... | | | 6 | |
| | 7 Gross royalties ....................... | | | 7 | |
| | 8 Capital gain net income (attach Schedule D (Form 1120)) ...... | | | 8 | |
| | 9 Net gain or (loss) from Form 4797, Part II, line 17 (attach Form 4797) ... | | | 9 | |
| | 10 Other income (see instructions — attach schedule) ......... | | | 10 | |
| | 11 Total income. Add lines 3 through 10 .............. ▶ | | | 11 | |

| | | | |
|---|---|---|---|
| **D E D U C T I O N S** (See instructions for limitations on deductions.) | 12 Compensation of officers (Schedule E, line 4) ........... | | 12 | |
| | 13 Salaries and wages (less employment credits) ........... | | 13 | |
| | 14 Repairs and maintenance .................. | | 14 | |
| | 15 Bad debts ....................... | | 15 | |
| | 16 Rents ......................... | | 16 | |
| | 17 Taxes and licenses .................... | | 17 | |
| | 18 Interest ........................ | | 18 | |
| | 19 Charitable contributions ................. | | 19 | |
| | 20 Depreciation from Form 4562 not claimed on Schedule A or elsewhere on return (attach Form 4562) ... | | 20 | |
| | 21 Depletion ........................ | | 21 | |
| | 22 Advertising ...................... | | 22 | |
| | 23 Pension, profit-sharing, etc, plans ............ | | 23 | |
| | 24 Employee benefit programs ................ | | 24 | |
| | 25 Domestic production activities deduction (attach Form 8903) .... | | 25 | |
| | 26 Other deductions (attach schedule) . See Other Deductions Statement .. | | 26 | |
| | 27 Total deductions. Add lines 12 through 26 ........... ▶ | | 27 | |
| | 28 Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11 | | 28 | |
| | 29 Less:   a Net operating loss deduction (see instructions) ...... 29a | | | |
| | b Special deductions (Schedule C, line 20) ......... 29b | | 29c | |

| | | | |
|---|---|---|---|
| **T A X   A N D   P A Y M E N T S** | 30 Taxable income. Subtract line 29c from line 28 (see instructions) ...... | | 30 | |
| | 31 Total tax (Schedule J, line 10) ................. | | 31 | |
| | 32a 2006 overpayment credited to 2007 .. 32a | | | |
| | b 2007 estimated tax payments ...... 32b | | | |
| | c 2007 refund applied for on Form 4466 . 32c | d Bal ▶ | 32d | |
| | e Tax deposited with Form 7004 ................. | | 32e | |
| | f Credits: (1) Form 2439 | (2) Form 4136 | 32f | 32g | |
| | 33 Estimated tax penalty (see instructions). Check if Form 2220 is attached ........ ▶ ☐ | | 33 | |
| | 34 Amount owed. If line 32g is smaller than the total of lines 31 and 33, enter amount owed ... | | 34 | |
| | 35 Overpayment. If line 32g is larger than the total of lines 31 and 33, enter amount overpaid ... | | 35 | |
| | 36 Enter amount from line 35 you want: Credited to 2008 estimated tax ▶ | Refunded ▶ | 36 | |

| Sign Here | Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge. | | May the IRS discuss this return with the preparer shown below (see instructions)? |
|---|---|---|---|
| ▶ | Signature of officer | Date | **PRESIDENT** Title | ☒ Yes ☐ No |

| Paid Preparer's Use Only | Preparer's signature ▶ | | Date | Check if self-employed ☐ | Preparer's SSN or PTIN P06 |
|---|---|---|---|---|---|
| | Firm's name (or yours if self-employed), address, and ZIP code | SOLAKIAN, CAIAFA & COMPANY,   LLC | | | EIN   06- |
| | | 375 MATHER ST | | | |
| | | HAMDEN | | CT   06514-3101 | Phone no. (203) 248-8600 |

BAA For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.      CPCA0212   12/27/07      Form 1120 (2007)

Redacted

34

| Form **1120** | | | | **U.S. Corporation Income Tax Return** | | | | OMB No. 1545-0123 | |
|---|---|---|---|---|---|---|---|---|---|
| Department of the Treasury Internal Revenue Service | | | | For calendar year 2008 or tax year beginning **Apr 1**, **2008**, ending **Mar 31**, **2009** ▶ See separate instructions. | | | | **2008** | |

| A Check if: | | | | Name BRAIN TUNNELGENIX TECHNOLOGIES CORP. (FORMERLY STERLINE INT'L CORP.) | B Employer identification number 03- |
|---|---|---|---|---|---|
| 1 a Consolidated return (attach Form 851) ☐ | | Use IRS label. Otherwise, print or type. | | Number, street, and room or suite number. If a P.O. box, see instructions. 375 MATHER STREET | C Date incorporated 03/03/2006 |
| b Life/nonlife consolidated return ☐ | | | | City or town                        state  ZIP code | D Total assets (see instructions) |
| 2 Personal holding co (attach Sch PH) ☐ | | | | HAMDEN                        CT  06514-3101 | $ |
| 3 Personal service corp (see instructions) ☐ | | E  Check if: (1) ☐ Initial return  (2) ☐ Final return  (3) ☒ Name change  (4) ☐ Address change | | | |
| 4 Schedule M-3 attached ☐ | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| **I N C O M E** | 1 a Gross receipts or sales | | b Less returns & allowances | c Balance ▶ | 1c |
| | 2 Cost of goods sold (Schedule A, line 8) | | | | 2 |
| | 3 Gross profit. Subtract line 2 from line 1c | | | | 3 |
| | 4 Dividends (Schedule C, line 19) | | | | 4 |
| | 5 Interest | | | | 5 |
| | 6 Gross rents | | | | 6 |
| | 7 Gross royalties | | | | 7 |
| | 8 Capital gain net income (attach Schedule D (Form 1120)) | | | | 8 |
| | 9 Net gain or (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | | | 9 |
| | 10 Other income (see instructions – attach schedule)  See Other Income Statement | | | | 10 |
| | 11 **Total income.** Add lines 3 through 10 | | | ▶ | 11 |

| | | | |
|---|---|---|---|
| **D E D U C T I O N S** (FOR LIMITATIONS ON DEDUCTIONS, SEE INSTRUCTIONS) | 12 Compensation of officers (Schedule E, line 4) | | 12 |
| | 13 Salaries and wages (less employment credits) | | 13 |
| | 14 Repairs and maintenance | | 14 |
| | 15 Bad debts | | 15 |
| | 16 Rents | | 16 |
| | 17 Taxes and licenses | | 17 |
| | 18 Interest | | 18 |
| | 19 Charitable contributions | | 19 |
| | 20 Depreciation from Form 4562 not claimed on Schedule A or elsewhere on return (attach Form 4562) | | 20 |
| | 21 Depletion | | 21 |
| | 22 Advertising | | 22 |
| | 23 Pension, profit-sharing, etc., plans | | 23 |
| | 24 Employee benefit programs | | 24 |
| | 25 Domestic production activities deduction (attach Form 8903) | | 25 |
| | 26 Other deductions (attach schedule)  See Other Deductions Statement | | 26 |
| | 27 **Total deductions.** Add lines 12 through 26 | ▶ | 27 |
| | 28 Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11 | | 28 |
| | 29 Less:  a Net operating loss deduction (see instructions) | 29a | |
| | b Special deductions (Schedule C, line 20) | 29b | 29c |

| | | | |
|---|---|---|---|
| **TAX AND PAYMENTS** | 30 Taxable income. Subtract line 29c from line 28 (see instructions) | | 30 |
| | 31 Total tax (Schedule J, line 10) | | 31 |
| | 32 a 2007 overpayment credited to 2008 | 32a | |
| | b 2008 estimated tax payments | 32b | |
| | c 2008 refund applied for on Form 4466 | 32c | |
| | d Bal ▶ | 32d | |
| | e Tax deposited with Form 7004 | 32e | |
| | f Credits: (1) Form 2439  (2) Form 4136 | 32f | |
| | g Refundable credits from Form 3800, line 19c, and Form 8827, line 8c | 32g | 32h |
| | 33 Estimated tax penalty (see instructions). Check if Form 2220 is attached ▶ ☐ | | 33 |
| | 34 Amount owed. If line 32g is smaller than the total of lines 31 and 33, enter amount owed | | 34 |
| | 35 Overpayment. If line 32g is larger than the total of lines 31 and 33, enter amount overpaid | | 35 |
| | 36 Enter amount from line 35 you want: Credited to 2009 estimated tax ▶   Refunded ▶ | | 36 |

| Sign Here | Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge. | | May the IRS discuss this return with the preparer shown below (see instructions)? |
|---|---|---|---|
| | ▶ _____ Signature of officer   Date | ▶ **CEO** Title | ☒ Yes  ☐ No |

| Paid Preparer's Use Only | Preparer's signature ▶ **PAUL A. CAIAFA, CPA, MST** | Date | Check if self-employed ☐ | Preparer's SSN or PTIN P00 |
|---|---|---|---|---|
| | Firm's name (or yours if self-employed), address, and ZIP code ▶ **SOLAKIAN, CAIAFA & COMPANY, LLC** | | EIN 06- | |
| | **375 MATHER ST** | | | |
| | **HAMDEN                        CT  06514-3101** | | Phone no. **(203) 248-8600** | |

BAA  For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.          CPCA0212  12/01/08                    Form **1120** (2008)

Redacted

# U.S. Corporation Income Tax Return

**Form 1120**
Department of the Treasury
Internal Revenue Service

For calendar year 2009 or tax year beginning **Apr 1**, 2009, ending **Mar 31**, **2010**
► See separate instructions.

OMB No. 1545-0123

**2009**

A Check if:
1a Consolidated return (attach Form 851) ☐
b Life/nonlife consolidated return ☐
2 Personal holding co (attach Sch PH) ☐
3 Personal service corp (see instrs) ☐
4 Schedule M-3 attached ☐

Use IRS label. Otherwise, print or type.

Name: **BRAIN TUNNELGENIX TECHNOLOGIES CORP.**
Number, street, and room or suite number. If a P.O. box, see instructions.
**375 MATHER STREET**
City or town, state, ZIP code
**HAMDEN            CT   06514-3101**

B Employer identification number
**03-**
C Date incorporated
**03/03/2006**
D Total assets (see instructions)
$

E Check if: (1) ☐ Initial return   (2) ☐ Final return   (3) ☐ Name change   (4) ☐ Address change

| | | | | | | |
|---|---|---|---|---|---|---|
| **I N C O M E** | 1a Gross receipts or sales | | b Less returns & allowances | | c Balance ► | 1c |
| | 2 Cost of goods sold (Schedule A, line 8) | | | | | 2 |
| | 3 Gross profit. Subtract line 2 from line 1c | | | | | 3 |
| | 4 Dividends (Schedule C, line 19) | | | | | 4 |
| | 5 Interest | | | | | 5 |
| | 6 Gross rents | | | | | 6 |
| | 7 Gross royalties | | | | | 7 |
| | 8 Capital gain net income (attach Schedule D (Form 1120)) | | | | | 8 |
| | 9 Net gain or (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | | | | 9 |
| | 10 Other income (see instructions — attach schedule) .See Other Income Statement | | | | | 10 |
| | 11 Total income. Add lines 3 through 10 | | | | ► | 11 |
| **D E D U C T I O N S (See instructions for limitations on deductions.)** | 12 Compensation of officers (Schedule E, line 4) | | | | | 12 |
| | 13 Salaries and wages (less employment credits) | | | | | 13 |
| | 14 Repairs and maintenance | | | | | 14 |
| | 15 Bad debts | | | | | 15 |
| | 16 Rents | | | | | 16 |
| | 17 Taxes and licenses | | | | | 17 |
| | 18 Interest | | | | | 18 |
| | 19 Charitable contributions | | | | | 19 |
| | 20 Depreciation from Form 4562 not claimed on Schedule A or elsewhere on return (attach Form 4562) | | | | | 20 |
| | 21 Depletion | | | | | 21 |
| | 22 Advertising | | | | | 22 |
| | 23 Pension, profit-sharing, etc, plans | | | | | 23 |
| | 24 Employee benefit programs | | | | | 24 |
| | 25 Domestic production activities deduction (attach Form 8903) | | | | | 25 |
| | 26 Other deductions (attach schedule) .See Other Deductions Statement | | | | | 26 |
| | 27 Total deductions. Add lines 12 through 26 | | | | ► | 27 |
| | 28 Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11 | | | | | 28 |
| | 29 Less: a Net operating loss deduction (see instructions) | | | 29a | | |
| | b Special deductions (Schedule C, line 20) | | | 29b | | |
| | | | | | | 29c |
| **T A X A N D P A Y M E N T S** | 30 Taxable income. Subtract line 29c from line 28 (see instructions) | | | | | 30 |
| | 31 Total tax (Schedule J, line 10) | | | | | 31 |
| | 32a 2008 overpayment credited to 2009 | 32a | | | | |
| | b 2009 estimated tax payments | 32b | | | | |
| | c 2009 refund applied for on Form 4466 | 32c | | d Bal ► | 32d | |
| | e Tax deposited with Form 7004 | | | | 32e | |
| | f Credits: (1) Form 2439 | | (2) Form 4136 | | 32f | |
| | g Refundable credits from Form 3800, line 19c, and Form 8827, line 8c | | | | 32g | 32h |
| | 33 Estimated tax penalty (see instructions). Check if Form 2220 is attached ► ☐ | | | | | 33 |
| | 34 Amount owed. If line 32h is smaller than the total of lines 31 and 33, enter amount owed | | | | | 34 |
| | 35 Overpayment. If line 32h is larger than the total of lines 31 and 33, enter amount overpaid | | | | | 35 |
| | 36 Enter amount from line 35 you want: Credited to 2010 estimated tax ► | | Refunded ► | | | 36 |

**Sign Here**
Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of officer _____ Date ____

Title ► **CEO**

May the IRS discuss this return with the preparer shown below (see instructions)? ☒ Yes ☐ No

**Paid Preparer's Use Only**
Preparer's signature ► **PAUL A. CAIAFA, CPA, MST**
Date ____
Check if self-employed ☐
Preparer's SSN or PTIN **P0-**

Firm's name (or yours if self-employed), address, and ZIP code
**SOLAKIAN, CAIAFA & COMPANY, LLC**
**375 MATHER ST**
**HAMDEN            CT   06514-3101**

EIN **06-**
Phone no. **(203) 248-8600**

BAA For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.

CPCA0212   03/25/09

Form **1120** (2009)

Redacted

# EXHIBIT C



# Brain Temperature Tunnel™
## The World's First Noninvasive & Continuous Temperature Measurement

Based on the groundbreaking discovery by Yale researcher Dr. Marc Abreu of a new organ in the human body — the Brain Temperature Tunnel™ (BTT™), Brain Tunnelgenix Technologies Corp. has developed revolutionary technology that solves a 300-year old problem. Now, for the first time, human body temperature can be measured continuously outside the body, just like other vital signs like heart rate, blood pressure and respiratory rate.

More>>

**FDA Approval Announced  >**

**BTT™ Non-Contact  >**

**BTT™ Continuous  >**

## The Best of Biology Creating the Best of Technology

By harnessing the best of biology with the best of technology, the BTT offers unprecedented benefits for humanity. The immediate applications and opportunities created by the discovery of the BTT are far-reaching and widespread — encompassing the fields of medicine, sports and the military in addition to the workplace and even family planning.

What this means:

• Decreasing the spread of hospital-acquired infections (HAIs), which causes 99,000 U.S. patient deaths annually

• Drastically reducing the estimated two billion times per year that hospital nurses in the U.S. check patients' temperature

• Detecting infectious diseases, like H1N1 swine flu

• Preventing heat stroke in the military, firefighters, industrial workers and athletes

• Providing a natural method for tracking fertility and birth control

• Continuously monitoring human body temperature like any other vital sign — heart rate, blood pressure and respiratory rate

## Applications of the BTT



Privacy Policy | Terms of Use | Contact Us | Site Map

Copyright © 2010 Brain Tunnelgenix Technologies Corp. All Rights Reserved.

http://www.braintunnelgenix.com/                                                    12/29/2010



## About Us

## BTT Corp. … Unlike any company you have ever known

BTT Corp. is the first company to bring together both diagnostic and therapeutic technology based on a biological discovery.

We are a company that uniquely harnesses the power of life by combining biological discoveries with the creation of revolutionary technologies that will impact virtually every aspect of life.

This technological platform promises to set a new standard in health care while improving care in hospital wards, emergency rooms, operating rooms, doctors' offices, ambulances and family homes. The BTT systems address some of the most prevalent public health problems currently facing the world today, such as global warming, bird flu and the swine flu pandemic as well as hospital infection, the shortage of nurses, decreased blood supply and increased health care costs. BTT technologies provide the answers to some of today's most important medical, professional, military and athletic needs.

BTT Corp. has an unmatched portfolio of proprietary products, including Dr. Marc Abreu's revolutionary Brain Temperature Tunnel™ product line — both diagnostic and therapeutic. This portfolio provides a strong foundation for sustainable growth and success with a rare and unique capacity for a rapid flow of innovative, patented products. Our platform is powered by combining unparalleled innovation with the most advanced sensing systems, hardware and software to provide revolutionary solutions to improve the quality of life in a universal fashion around the world.

Our technologies are protected by a multi-million dollar investment in patents worldwide. We have more than 60 patents and patent applications in the U.S. and in more than 40 other countries — representing 85% of the world's purchasing power.

BTT Corp. looks to a future of unprecedented potential, and by combining the talents of many dedicated people, we are poised to set the standards for many activities and industries. We invite you to get to know more about BTT Corp., its management team, its unrivaled biological discoveries and technologies and the products that will transform life around the world in the 21st century.

Privacy Policy | Terms of Use | Contact Us | Site Map

Copyright © 2010 Brain Tunnelgenix Technologies Corp. All Rights Reserved.

http://www.braintunnelgenix.com/about_us.html

12/29/2010

Brain Tunnelgenix Technologies



**BRAIN TUNNELGENIX TECHNOLOGIES CORP.**

Home | About Us | *BTT Science | Applications & Markets | Products | Product Pipeline | News & Media | Partnering

BTT Discovery    Tractional Thermometry

## About the Brain Temperature Tunnel™

BTT Corp. brings the power of the brain's tunnel of light to the surface.

The Brain Temperature Tunnel (BTT™) is a direct and undisturbed connection between the thermal storage area in the brain and the surface of the skin at the inner corner of the eye.

This "tunnel of light" enables humanity — for the first time in history — to have noninvasive, continuous temperature measurement.

Thermal energy is directly transferred through the BTT without the interference of elements (such as fat) that absorb the far-infrared radiation transmitted as heat by the blood from the brain. The BTT bypasses the barriers that insulate the brain (scalp, galea aponeurotica, fat, pericranium, bone, CSF and meninges).

Until now, human engineering has been able to continuously monitor temperature in a car, a space shuttle, your computer and other machines to aid performance and lengthen operating lifecycles. The technology provided by BTT Corp. allows humans to extend these advances to our own bodies. Now, we can continuously and noninvasively monitor our own body temperature — the first advance in modern thermometry in 300 years.





The method used for measuring body temperature has not changed since the 16th century

Thermal image of the BTT's "tunnel of light"

Privacy Policy | Terms of Use | Contact Us | Site Map

41



**BRAIN TUNNELGENIX**
**TECHNOLOGIES CORP**

Home   About Us   BTT Science   · Applications & Markets   Products   Product Pipeline   News & Media   Partnering

Medical Markets   Consumer Markets   Sports & Hydration   Occupational   Military

## Applications & Markets

### Medical Markets

BTT™ technologies have broad application in the medical market. Consider this: medical professionals in urgent care, OR/ICU and other critical care units as well as out-patient settings will have the ability to have continuous temperature ...

More>>



### Consumer Markets

The benefits of noninvasive continuous temperature monitoring are wide and reach to many areas of human activity outside of the world of medicine, including family planning, leisure and sports activities.

More>>



### Sports & Hydration

Every year millions of athletes suffer from reduced performance and heat injury due to overheating, leading even to unnecessary deaths. There is an urgent need for temperature monitoring during outdoor sports ...

More>>



### Occupational

There is an urgent need for temperature monitoring in many activities during high and low ambient temperature. During training and during responses to fires, firefighters can be exposed to fatal disturbances of temperature ...

More>>



### Military

Military personnel participating in the basic monitoring and operational deployments will often encounter heat stress that requires careful management for missions to be successfully accomplished ...

More>>



Privacy Policy | Terms of Use | Contact Us | Site Map

Copyright © 2010 Brain Tunnelgenix Technologies Corp. All Rights Reserved.

http://www.braintunnelgenix.com/applications.html

12/29/2010

**btt**
BRAIN TUNNELGENIX
TECHNOLOGIES CORP    Home  About Us   BTT Science   Applications & Markets   • Products   Product Pipeline   News & Media   Partnering
Abreu BTT™ 700 System      Abreu BTT™ Continuous System      Abreu-BTT™ Spot Check

## BTT™ Products

### *Now FDA Approved.*

- **Abreu BTT™ 700 System**

The *Abreu BTT™ 700 System* is a computer-based sensing system (continuous "finger" model and pen-like contact device) designed to record skin surface temperature. This product will be suitable for continuous or spot-check temperature monitoring for medical and home use as well as for academic studies.

### *THESE DEVICES ARE NOT YET AVAILABLE FOR SALE IN THE U.S.*

- **Abreu-BTT™ Continuous System — Model 1000**

The *Abreu BTT™ Continuous System — Model 1000* is designed for hospital use of continuous temperature monitoring.

- **Abreu-BTT Spot Check™**

The *Abreu BTT™ Spot Check* is a hand-held Infrared (IR) device for taking temperature on a contact or non-contact basis.

Privacy Policy | Terms of Use | Contact Us | Site Map
Copyright © 2010 Brain Tunnelgenix Technologies Corp. All Rights Reserved.

http://www.braintunnelgenix.com/products.html

12/29/2010

43



Home   About Us   BTT Science   Applications & Markets   Products   • Product Pipeline   News & Media   Partnering

Abreu BTT™ 700 System   Abreu BTT™ Continuous System   Abreu BTT™ Spot Check   Wireless Devices   Intelligent Eyewear

## BTT™ Product Pipeline

**Our devices are not yet available for sale in the U.S**



Abreu BTT™ 700 System



Abreu BTT™ Continuous System



Abreu BTT™ Spot Check



BTT™ Wireless Devices



BTT™ Intelligent Eyewear

Privacy Policy | Terms of Use | Contact Us | Site Map
Copyright © 2010 Brain Tunnelgenix Technologies Corp. All Rights Reserved

http://www.braintunnelgenix.com/products%20pipeline.html                    12/29/2010



# News & Presentations

The discovery of BTT has received enormous coverage globally, some of which can be found below. Please contact us for more information.





**Reuters**



**Yale University Press**



**Clic**

NOTE: Yale University first published its results of early research in The Yale Bulletin in 2003 ('Yale Researcher Discovers "Brain Temperature Tunnel" That For The First Time Allows External Continuous Measurement of Brain Temperature' Published: July 2, 2003). Independent Investigators at the University of Connecticut Medical Center and the Department of Anesthesiology at Hartford Hospital validated the BTT™ in surgery as measuring core temperature noninvasively. All investigators (with the exception of Dr. Abreu) have no financial interest in BTT Corp. or in the BTT™ technologies, and did not receive

any funds from the Company to do the
investigation.



BNet



Ivanhoe.com



New Haven Register







Privacy Policy | Terms of Use | Contact Us | Site Map
Copyright © 2010 Brain Tunnelgenix Technologies Corp. All Rights Reserved.

47



Home | About Us | BTT Science | Applications & Markets | Products | Product Pipeline | News & Media | • Partnering |

## Partnering Opportunities

We are very excited about our product lines, and are looking to establish strategic collaborations with a select group of companies that can help us leverage and expand our internal capabilities.

We see our strategic partnerships playing a key role in our growth and success as a company going forward.

Please contact us for innovative ways to partner with our company.



48

Privacy Policy | Terms of Use | Contact Us | Site Map
Copyright © 2010 Brain Tunnelgenix Technologies Corp. All Rights Reserved.



Home   About Us   •  BTT Science   Applications & Markets   • Products   Product Pipeline   News & Media   Partnering

## Contact Us

Name *

Address

City State Zip

Telephone *                               123-123-1234

Email *                                    name@domain.com

Confirm Email *

Please check the appropriate department(s)          ☐ Sales and Purchasing
so that we may supply the correct information

Please check the appropriate department(s)          ☐ IP and Patents
so that we may supply the correct information

Please check the appropriate department(s)          ☐ General Information
so that we may supply the correct information

Please include a brief comment or question *

* Required field

[ Submit ]   [ Reset ]

Privacy Policy | Terms of Use | Contact Us | Site Map
Copyright © 2010 Brain Tunnelgenix Technologies Corp. All Rights Reserved.

http://www.braintunnelgenix.com/contact_form.html

12/29/2010

# EXHIBIT D

Subj:     510K Bill of sales
Date:     5/10/2006 6:32:24 P.M. Eastern Daylight Time
From:     dtfwu@deltatrak.com
To:       cdikeman@entracare.com
CC:       MAbreuMD@aol.com, alw@eterlink.com

Cary,

As per our discussion, Eterlink will purchase the 510K for the Entracare model 1000 for an equivalent sum of $24,000 for 8000 Eterlink common shares. In addition to the original 510K, this purchase price includes the re application fee to change the name and bring up the features of the product description to the existing BTT thermometer as indicated in the user manual. Entracare will provide all necessary regulatory application resources to accomplish this as part of this asset purchase agreement.

Based on this, please issue a Bill of Sale to Eterlink International Corp. 72 Highland Park Road, North haven, CT 08473. Please scan and email me the BOS and forward the original to my office 3922 Valley Ave. # A, Pleasanton, CA 94566.

Thanks,
Fred Wu

1 | STATE OF CALIFORNIA                )
                                       ) ss:
2 | COUNTY OF LOS ANGELES              )

3
4     I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen (18) years and not a party to the within action.  My business address is 26135 Mureau Road, Suite 101, Calabasas, California 91302.

5     On December 29, 2010, I served the document described as

6 **DEFENDANTS BRAIN TUNNELGENIX TECHNOLOGIES CORP. AND MARCIO**
7 **ABREU'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT FOR**
**LACK OF PERSONAL JURISDICTION [FED.R.CIV.P. 12(b)(2)]; MEMORANDUM OF**
8 **POINTS AND AUTHORITIES; DECLARATIONS OF MARCIO ABREU AND ANDRES**
**F. QUINTANA**
9

10 on counsel for the parties in this action, or on the parties <u>in propria persona</u>, addressed as stated on the attached service list:

11 [X]    BY MAIL:  By placing true and correct copies thereof in individual sealed envelopes, with postage thereon fully prepaid, which I deposited with my employer for collection and
12 mailing by the United States Postal Service.  I am readily familiar with my employer's practice for the collection and processing of correspondence for mailing with the United States Postal
13 Service.  In the ordinary course of business, this correspondence would be deposited by my employer with the United States Postal Service on that same day.  I am aware that on motion of
14 the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.
15

16 [X]    (FEDERAL) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

17 EXECUTED on December 29, 2010 at Calabasas, California.

18
19
20     Beatriz Singleton
21
22
23
24
25
26
27
28

Quintana Law
Group, APC

1

**<u>SERVICE LIST</u>**

2

3    Richard T. Bowles, Esq.
     Bradley Bowles, Esq.

4    Michael P. Connolly, Esq.
     BOWLES & VERNA, LLP

5    2121 N. California Blvd. Suite 875
     Walnut Creek, California 94596

6

7    *Attorneys for Plaintiffs*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Quintana Law
Group, APC