RICHARD T. BOWLES (# 46234)
BRADLEY R. BOWLES (# 202722)
MICHAEL P. CONNOLLY (#238478)
BOWLES & VERNA LLP
2121 N. California Boulevard, Suite 875
Walnut Creek, California  94596
Telephone:  (925) 935-3300
Facsimile:  (925) 935-0371
Email:  rbowles@bowlesverna.com
         bbowles@bowlesverna.com

Attorneys for Plaintiffs
DATA MARK, INC. dba DELTATRAK
TECHNOLOGIES, a California corporation,
FREDERICK L. WU, an individual

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DATA MARK, INC. dba DELTATRAK TECHNOLOGIES, a California corporation; FREDERICK L. WU, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> BRAIN TUNNELGENIX TECHNOLOGIES CORP. f/k/a ETERLINK INTERNATIONAL CORPORATION, a Delaware corporation; MARCIO AURELIO MARTINS ABREU a/k/a M. MARC ABREU, M.D., an individual; JOSEPH ROGER TITONE, an individual; TITRONICS RESEARCH & DEVELOPMENT CO., INC., an Iowa corporation; and DOES 1 through 100, inclusive, <br><br> Defendants. | CASE NO.:  CV 10-04958 JSW <br><br> **FIRST AMENDED COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Data Mark, Inc. dba DeltaTrak Technologies, a California corporation, and Frederick L. Wu, an individual, (collectively "Plaintiffs"), complain of defendants, and each of them, and hereby allege as follows:

### THE PARTIES

1. Plaintiff Data Mark, Inc. dba DeltaTRAK Technologies, ("DeltaTRAK") is, and at all times relevant herein was, a corporation duly organized under the laws of the State of California with its principal place of business in the City of Pleasanton, Alameda County, California.

Bowles & Verna LLP
2121 N. California Blvd.
Suite 875
Walnut Creek 94596

1
FIRST AMENDED COMPLAINT

Case No.: CV 10-04958 JSW

2.      Plaintiff Frederick L. Wu ("Wu") is an adult individual residing in the City of San Ramon, Contra Costa County, California.

3.      Defendant Brain Tunnelgenix Technologies Corp. ("BTTC") is, and at all times relevant herein was, a corporation duly organized under the laws of the State of Delaware, with its principal place of business in City of Hamden, New Haven County, Connecticut.  Plaintiffs are informed and believe, and thereon allege that BTTC is the successor in interest to Eterlink International Corporation ("Eterlink"), a corporation duly organized under the laws of the State of Delaware which was licensed to do and doing business in California with a principal place of business located in the City of Pleasanton, Alameda County, California.

4.      Plaintiffs are informed and believe, and thereon allege that sometime in 2009 Eterlink changed its name to Brain Tunnelgenix Technologies Corp. but remains in all material respects the same entity.  Reference herein to "Eterlink" is intended to refer to corporate defendant BTTC.  Reference to "BTTC" is also intended to include any actions that were undertaken by BTTC's predecessor in name, Eterlink.

5.      Defendant Marcio Aurelio Martins Abreu a/k/a M. Marc Abreu, M.D. ("Abreu") is an adult individual.  Plaintiffs are informed and believe and allege thereon that Abreu resides in the City of Hamden, New Haven County, Connecticut.

6.      Defendant Joseph Roger Titone ("Titone") is an adult individual.  Plaintiffs are informed and believe and allege thereon that Titone resides in the City of Oxford, Johnson County, Iowa.

7.      Defendant Titronics Research & Development Co., Inc. ("Titronics") is, and at all times relevant was, a corporation duly organized under the laws of the State of Iowa, with its principal place of business in City of Tiffin, Johnson County, Iowa.

8.      The true names and capacities whether individual, corporate, associate, or otherwise, of Doe defendants 1 through 100, inclusive, are unknown to Plaintiffs at this time, and as such, Plaintiffs therefore sue said Doe defendants by such fictitious names and will ask leave of Court to amend this Complaint to show the true names and capacities when same have been ascertained.  Plaintiffs are informed and believe, and thereon allege, that each of the defendants designated herein as a Doe defendant is responsible in some manner for the events and happenings herein referred to and which

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

2

Case No.: CV 10-04958 JSW

FIRST AMENDED COMPLAINT

1   proximately caused damages as alleged herein.  Plaintiffs are further informed and believe, and thereon

2   allege, that each of the defendants sued herein is responsible in some manner for the occurrences herein

3   alleged, and that Plaintiffs' damages, as alleged herein, were proximately caused by such defendants.

4      9.  Plaintiffs are informed and believe, and on that basis allege, that each of the defendants

5   herein, except as specifically alleged otherwise, is and was at all times an agent, employee,

6   representative, partner or joint venturer with the remaining defendants, and was acting within the course

7   and scope of that relationship.  Plaintiffs are further informed and believe, and on that basis allege, that

8   each of the defendants herein ratified, authorized and/or gave consent to the acts alleged herein of the

9   remaining defendants.

10              **JURISDICTION AND VENUE**

11      10.  Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) in that

12   Plaintiffs are citizens of different states than all Defendants and the amount in controversy exceeds

13   $75,000.

14      11.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) in that a substantial part

15   of the events or omissions giving rise to the claim occurred within the District of California.

16              **INTRADISTRICT ASSIGNMENT**

17      12.  Pursuant to Civil L.R. 3-2(c) and 3-5(b), this action should be properly assigned to the

18   Oakland Division as the County of Alameda is where a substantial part of the events and/or omissions

19   that are the subject of the action occurred.

20              **FACTUAL BACKGROUND**

21           **Abreu Solicits Investment in GMI Medical**

22      13.  Wu is the principal and controlling shareholder of DeltaTRAK.

23      14.  DeltaTRAK engages in the research, development and sale of specialized temperature

24   sensing equipment and related equipment and services.

25      15.  Abreu claims to have developed a revolutionary means of measuring human body

26   temperature by way of the "Brain Temperature Tunnel" or "BTT."

27      16.  In or about August of 2005, in an effort to finance the further research, development,

28   design, engineering and commercial marketing of the BTT concept, Abreu solicited Plaintiffs to provide

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

3     Case No.: CV 10-04958 JSW

**FIRST AMENDED COMPLAINT**

research and development services as well as a financial investment to Abreu and his operating

companies: GMI Industries, Inc. and GMI Medical, Inc. (collectively, "GMI").  Plaintiffs are informed

and believe and allege thereon that GMI was owned by Abreu and his investors, J. Roger Titone and

Gordon Levy.  Wu was to provide the solicited services and financial investment through DeltaTRAK.

17.    Abreu solicited this investment from Wu by cold-calling him at his office in Pleasanton,

CA in or about July 2005.  Subsequently, Abreu and future BTTC President Armstrong Wong traveled

to Pleasanton and met with Wu to further discuss the proposed deal.  Wong was a resident of California

at the time.

18.    In soliciting Plaintiffs' services and financial investment, Abreu represented to Plaintiffs

that the key asset owned by GMI was the BTT intellectual property as well as any finished commercial

medical devices that would flow from the validation of that intellectual property.

19.    In exchange for services and financial investment of $500,000 to be provided by

Plaintiffs, Abreu offered the following terms:

      a.  DeltaTRAK would receive preferred shares in GMI in exchange for the financial
investment;

      b.  Wu would be named a director of the corporation;

      c.  DeltaTRAK would have the exclusive manufacturing rights to the BTT product that
DeltaTRAK was to research and develop for Abreu and GMI; and

      d.  Wu would be a consultant to GMI and be compensated for managing the research
and development of the BTT intellectual property.

20.    The negotiations of this exchange took place in person in Pleasanton, California.

21.    Wu accepted the terms offered by Abreu in or about November 2005 and invested

$500,000 in cash funds into GMI.

### Closure of GMI and Formation of Eterlink a/k/a BTTC

22.    Subsequently, Abreu, Titone and Levy closed GMI due to an internal dispute with a

company investor.  Plaintiffs' financial investment was not returned nor was Plaintiffs ever issued

preferred shares in GMI for his investment.

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

4

Case No.: CV 10-04958 JSW

FIRST AMENDED COMPLAINT

23.     Abreu reassured Wu that Plaintiffs would be provided with the exclusive manufacturing rights for the BTT product being developed regardless of the situation of GMI.  Abreu also affirmed that the key asset of the new entity would be the BTT intellectual property as well as any finished commercial medical devices that would flow from the validation of that intellectual property.

24.     Thereafter, Abreu formed a new entity known as Eterlink International Corporation (which is referred to as "BTTC" throughout the Complaint for consistency) on or about March 3, 2006 of which Plaintiffs are informed and believe and allege thereon that he was the sole shareholder, officer and director.

25.     In transitioning from the GMI entities, and on or around the date of formation of BTTC, Abreu and BTTC offered Wu the following terms in exchange for his investment:

     a.   Wu would be appointed to the Board of Directors and be named the Secretary of the corporation.  Wu would receive shares in BTTC as compensation for these services, which would be, and were, performed in California;

     b.   Wu would receive BTTC shares as compensation for providing office space and research and development services at DeltaTRAK's Pleasanton, California facility in order to serve as BTTC's corporate headquarters;

     c.   Wu would receive BTTC shares as compensation for managing the research and product development projects for BTTC;

     d.   DeltaTRAK would receive the exclusive right to manufacture the BTT products developed by DeltaTRAK for BTTC

     e.   The research, development, and manufacturing related to the BTT products would be, and was, performed by DeltaTRAK in California; and

     f.   Wu would receive a financial bonus for introducing new investors to BTTC.

26.     Wu and DeltaTRAK agreed to the terms offered by Abreu and BTTC on or about March 14, 2006.  The negotiations to this contract occurred in Pleasanton, and the contract was agreed to in Pleasanton, California.

27.     Thereafter, on or about March 15, 2006, Wu was named to the Board of Directors.

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

5

Case No.: CV 10-04958 JSW

FIRST AMENDED COMPLAINT

28.     Thereafter, on or about March 16, 2006, Wu was appointed Vice President and Secretary of BTTC by written consent of the board of directors.

29.     Thereafter, Wu performed these functions for BTTC from his Pleasanton, California office.

30.     On or about April 4, 2006, BTTC issued a written board resolution retaining Wu as a consultant to BTTC for development of finished commercial devices for the BTT concept.  In retaining Wu as a consultant, BTTC and its board of directors were expressly aware that the consulting arrangement with Wu would involve receiving services from DeltaTRAK, which was and is owned by Wu.  These services were to be performed by DeltaTRAK in California.

31.     In addition, on or about December 2, 2008, BTTC issued a written board resolution approving compensation to Wu and DeltaTRAK consistent with the parties' agreement.

**BTTC Appoints DeltaTRAK as Product Development and Manufacturing Provider**

32.     On or about September 15, 2006, DeltaTRAK and BTTC entered into a written contract whereby BTTC appointed DeltaTRAK as BTTC's product development and manufacturing service provider for certain BTTC products.

33.     The contract was entered into in California and was to be performed in California.

34.     Under the terms of the agreement, DeltaTRAK was to provide product development and manufacturing services for BTTC products related to the BTT continuous monitor and logging thermometer and BTTC was to compensate DeltaTRAK for such services.

35.     The term of the agreement provided DeltaTRAK the ability to manufacture BTTC products through December 31, 2012.

36.     DeltaTRAK is informed and believes, and alleges thereon, that BTTC has utilized, and is presently utilizing, the manufacturing services of a third party manufacturer for BTTC products in breach of the parties agreement.

**Abreu Licenses the BTT Intellectual Property to Separate Entity Controlled by Him.**

37.     Plaintiffs are informed and believe and allege thereon that prior to forming BTTC, Abreu formed an off-shore company, Healing Power International Limited ("HPI"), a British Virgin Islands

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

6

Case No.: CV 10-04958 JSW

FIRST AMENDED COMPLAINT

1   company, that was controlled by him and whose purpose was to hold patents and intellectual property

2   that Abreu was involved with.

3        38.    Plaintiffs are informed and believe that on or about April 16, 2006, Abreu, in his

4   individual capacity, granted to HPI a license to the patents and/or assignments for the BTT concept

5   which were controlled by Abreu.  These patents, assignments or other intellectual property had been

6   represented to Wu as being the key asset owned by BTTC, not Abreu.  These representations occurred

7   in California.

8        39.    Thereafter, on or about April 20, 2006, HPI granted a limited license to BTTC relating to

9   patents and assignments relating to the temperature sensing component of the BTT concept.

10   **Services and Intellectual Property Furnished by Wu and DeltaTRAK to Abreu and Eterlink**

11        40.    Pursuant to the April 4, 2006 board resolution appointing Wu a consultant, DeltaTRAK

12   was to provide, and did provide, to BTTC a fully furnished office space, dedicated phone line and

13   phone system, and a secretary in DeltaTRAK's Pleasanton, California offices for BTTC's exclusive

14   use.  DeltaTRAK also provided BTTC with administrative services, internet access, technical and

15   information technology assistance as well as a conference room for corporate meetings.

16        41.    Thereafter  Armstrong Wong, the President of BTTC, used BTTC's office space as his

17   primary office.  Abreu, the CEO and CTO of BTTC, visited and worked out of the Pleasanton BTTC

18   office an average of one week per month.  Abreu spoke with Wu in California almost every day,

19   including weekends, regarding BTTC business.

20        42.    BTTC conducted extensive operations from the Pleasanton office, including all of its

21   business, accounting, marketing, and product development with the exception of clinical trials.  BTTC

22   was also licensed to do business in California during the period it occupied the Pleasanton office.

23        43.    BTTC generated extensive documents in California, including purchase orders placed

24   with vendors, tax returns prepared by a California accountant, payroll documents, California medical

25   insurance coverage for Abreu and Wong, a California corporate bank account, and wireless telephone

26   contracts.

27        44.    BTTC also conducted board meetings in California.

28

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

7

Case No.: CV 10-04958 JSW

FIRST AMENDED COMPLAINT

45.     The contract by which BTTC appointed DeltaTRAK as its product development and manufacturing service provider stated that "[t]his Agreement shall be interpreted in accordance with the laws of the State of California.

46.     A business prospectus developed by BTTC during the time it operated from the Pleasanton office listed that office as its business address.

47.     Wu, in his role as research and development consultant to BTTC, and DeltaTRAK, through its provision of research, development, design and prototyping services and facility space, developed proprietary intellectual property in the form of BTT instrument prototypes, proprietary sensor assemblies and related parts, schematic drawings for the components as well as and molds for parts and custom firmware to operate the electronics (collectively, the "Intellectual Property").  This Intellectual Property was developed exclusively in California.

48.     Pursuant to the agreements, and in exchange for the services rendered by, and the Intellectual Property created by, DeltaTRAK, and in addition to Wu's service as a director, Wu, or his designee, was to receive, and BTTC was obligated to issue, more than one hundred thousand shares at a value of $3.20 per share with a value well in excess of the jurisdictional minimum, all according to proof at trial.  The stock was to have been issued to Wu in California for services performed in California.

49.     Despite demand, DeltaTRAK and Wu have not been compensated for their services or the Intellectual Property as agreed by the parties.

50.     Wu and DeltaTRAK contend that the Intellectual Property developed by them remains the property of DeltaTRAK until such time as Abreu or BTTC compensate Wu and DeltaTRAK for the services rendered, as agreed.  Abreu and BTTC dispute this contention.

51.     Wu and DeltaTRAK are informed and believe and allege thereon that BTTC has held out Wu and DeltaTRAK's Intellectual Property as its own for purposes of raising investment funds and without having compensated Wu and DeltaTRAK.

**Services Provided by Wu and DeltaTRAK to Abreu and BTTC for Gee-U Technology**

52.     During the timeframe of 2006 through 2008, Abreu devoted substantial time and BTTC corporate resources to a project known as Gee-U, which was to be a system for wearable electronics.

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

8

Case No.: CV 10-04958 JSW

FIRST AMENDED COMPLAINT

53.     Wu and Abreu agreed that Wu and DeltaTRAK would assist Abreu and BTTC in development of the Gee-U project in exchange for certain compensation.  The parties negotiated and agreed to this agreement in California.

54.     Pursuant to the agreement, Wu and DeltaTRAK provided to BTTC and Abreu research, development and prototyping services for the Gee-U technology valued at approximately $35,100, all according to proof at trial.

55.     Plaintiffs were to receive 10,968 common shares of BTTC stock for these services at a $3.20 per share valuation.

56.     Despite demand, Wu and DeltaTRAK have not been compensated as of this date.

57.     Wu and DeltaTRAK contend that the Gee-U prototypes developed by them remains the property of DeltaTRAK until such time as Abreu or BTTC compensate Wu and DeltaTRAK for the services rendered, as agreed.  Abreu and BTTC dispute this contention.

58.     Wu and DeltaTRAK are informed and believe and allege thereon that BTTC has held out Wu and DeltaTRAK's Intellectual Property and the Gee-U technology as its own for purposes of raising investment funds and without having compensated Wu and DeltaTRAK.

**Confidentiality Agreement and Eterlink's Forcing Out of Wu as Director**

59.     In early 2009, BTTC, through counsel, informed Wu that it wished to resolve outstanding issues of compensation for services provided by Wu and DeltaTRAK.  In doing so, Wu was requested to sign a confidentiality agreement that would keep the nature of any BTTC intellectual property confidential.

60.     Wu was amenable to such an agreement, but requested that any such agreement be mutual between the parties with regard to any unique intellectual property provided by Wu and DeltaTRAK to BTTC.

61.     BTTC refused this request and, on or about May 20, 2009, terminated Wu from his position as a Director of BTTC and has excluded him from participating in the company, of which he is the second largest investor.

///

///

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

9

Case No.: CV 10-04958 JSW

FIRST AMENDED COMPLAINT

**Titone and Titronics Attempt to Reverse Engineer DeltaTRAK's Intellectual Property**

62.     Titone is an investor and shareholder in BTTC.  Wu and DeltaTRAK are informed and believe that Titone is also an officer of BTTC.

63.     Wu and DeltaTRAK are informed and believe and allege thereon that BTTC provided the Intellectual Property developed by Wu and DeltaTRAK to Titone and his company Titronics sometime after May 2009.

64.     Wu and DeltaTRAK are informed and believe and allege thereon that Titone and Titronics, with direction from Abreu and BTTC, have reverse engineered the Intellectual Property and have extracted certain unique components developed by Wu and DeltaTRAK for inclusion in new devices.  The Intellectual Property developed by Wu and DeltaTRAK for Abreu and BTTC is not available on the open market and is unique and proprietary.

65.     Wu and DeltaTRAK are informed and believe and allege thereon that Titone and Titronics are aware that Wu and DeltaTRAK developed such Intellectual Property, have not been compensated for such Intellectual Property, and that there is a dispute with Abreu and BTTC over compensation and ownership.

66.     Titone was a shareholder in BTTC from the time of its incorporation.  Titone was also paid as a consultant by BTTC and/or Mr. Abreu during the time BTTC was operating out of the Pleasanton office.

67.     After Wu was removed from the BTTC Board of Directors, Titone was made an officer of BTTC and is now Vice President of Research and Development.

68.     Before Wu was removed from the BTTC Board of Directors, he had email and phone conversations with Titone from his office in Pleasanton.  Wu and Titone discussed many aspects of BTTC, including the business plan, investment in the company, product design, and vendor information.

69.     Wu also communicated to Titone his dissatisfaction with his removal from the BTTC Board of Directors and the fact that Wu and DeltaTRAK had not been paid by BTTC and Abreu as agreed.

///

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

10

Case No.: CV 10-04958 JSW

FIRST AMENDED COMPLAINT

**<u>FIRST CAUSE OF ACTION</u>**

**(Breach of Contract by Wu and DeltaTRAK against Abreu, BTTC and Does 1-100)**

70.     The allegations set forth in paragraphs 1 through 69 are re-alleged and incorporated herein by reference.

71.     Plaintiffs entered into an agreement with Abreu and BTTC in or about November 2005 and March 2006, whereby, in exchange for investment of $500,000, Plaintiffs would receive preferred shares and Wu would be made a director of BTTC and, in addition, would be compensated annually for his directorial role by the issuance to him of several thousand additional common shares per year.

72.     Further, as alleged above, Abreu and BTTC retained Wu in or around April 2006 as a research and development consultant and agreed, in addition, to provide compensation to DeltaTRAK for use of its Pleasanton, California facilities as a business location and for research, development, design and prototyping services rendered.

73.     BTTC entered a written agreement with DeltaTRAK on or about September 2006 for DeltaTRAK's provision of product development and manufacturing services for which BTTC was to compensate DeltaTRAK.

74.     Pursuant to the agreements, and in exchange for the services rendered by, and the Intellectual Property created by, DeltaTRAK, and in addition to Wu's service as a director, Wu, or his designee, was to receive, and BTTC was obligated to issue, more than one hundred thousand shares at a value of $3.20 per share with a value well in excess of the jurisdictional minimum, all according to proof at trial.

75.     Plaintiffs performed all obligations, covenants, terms and conditions required to be performed on their part pursuant to the terms of the agreements.  Any performance which Plaintiffs have not rendered has been excused, waived, or is not yet due or is unenforceable as a matter of law.

76.     On or about May 20, 2009, BTTC and Abreu breached the agreement by, among other things, failing to compensate Plaintiffs with the agreed upon amount of additional shares and by failing to retain Wu as a board director beyond May 2009.

///

///

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

11

Case No.: CV 10-04958 JSW

FIRST AMENDED COMPLAINT

77.     As a direct and proximate result of the breach of the terms of the agreement by BTTC and Abreu, Plaintiffs have been damaged in an amount according to proof at trial, but in no event less than the jurisdictional minimum of this Court.

## SECOND CAUSE OF ACTION

### (Negligent Misrepresentation by Wu and DeltaTRAK against Abreu, BTTC and Does 1-100)

78.     The allegations set forth in paragraphs 1 through 77 are re-alleged and incorporated herein by reference.

79.     BTTC and Abreu, in soliciting the investment of Plaintiffs, expressly represented as fact that Wu would be given a position as a member of the Board of Directors of BTTC in exchange for Plaintiffs' investment of $500,000 and, in addition, and that Wu would be compensated for his services as a Director and secretary by way of additional shares in the corporation.

80.     At the time of making this representation of fact, Abreu and BTTC knew this representation was not true and did not intend to retain a permanent position for Wu as a Board of Director.

81.     The representations by Abreu and BTTC were made with the intention of inducing Plaintiffs to rely on them and with the expectation that they would rely on them and invest in the company.  Plaintiffs did so reasonably rely on said representations in investing in the company.

82.     As a proximate cause of the conduct of Abreu and BTTC, Plaintiffs have suffered direct damages by reason of the loss of Wu's Board of Director's seat and oversight over Plaintiffs' investment, all in an amount to be established at trial, but in no event less than the jurisdictional minimum of this Court.

## THIRD CAUSE OF ACTION

### (Breach of Contract by Wu and DeltaTRAK against Abreu, BTTC and Does 1-100)

83.     The allegations set forth in paragraphs 1 through 82 are re-alleged and incorporated herein by reference.

84.     As alleged above, BTTC retained Wu and DeltaTRAK in or around April 2006 as a research and development consultant.  Wu and DeltaTRAK provided Abreu and BTTC research,

Bowles & Verna LLP
2121 N. California Blvd.
Suite 875
Walnut Creek 94596

12

Case No.: CV 10-04958 JSW

FIRST AMENDED COMPLAINT

1   development and prototyping services for the Gee-U technology valued at approximately $35,100, all

2   according to proof at trial.

3      85.   Plaintiffs were to receive 10,968 common shares of BTTC stock for these services at a

4   $3.20 per share valuation.

5      86.   Plaintiffs performed all obligations, covenants, terms and conditions required to be

6   performed on their part pursuant to the terms of the agreement.  Any performance which has not been

7   rendered has been excused, waived, or is not yet due or is unenforceable as a matter of law.

8      87.   BTTC and Abreu breached the agreement by, among other things, failing to compensate

9   Plaintiffs with the agreed upon amount of additional shares for Plaintiffs' services.

10     88.   As a direct and proximate result of the breach of the terms of the agreement by BTTC

11  and Abreu, Plaintiffs have been damaged in an amount according to proof at trial, but estimated at no

12  less than the jurisdictional minimum of this Court.

13                          **FOURTH CAUSE OF ACTION**

14                **(Breach of Contract by DeltaTRAK against BTTC and Does 1-100)**

15     89.   The allegations set forth in paragraphs 1 through 88 are re-alleged and incorporated

16  herein by reference.

17     90.   On or about September 15, 2006, DeltaTRAK and BTTC entered into a written contract

18  whereby BTTC appointed DeltaTRAK as BTTC's product development and manufacturing service

19  provider for certain BTTC products.

20     91.   The contract was entered into in Pleasanton, California and was to be performed in

21  California.

22     92.   Under the terms of the agreement, DeltaTRAK was to provide, and did provide, product

23  development and manufacturing services for BTTC products related to the BTT continuous monitor and

24  logging thermometer and BTTC was to compensate DeltaTRAK for such.

25     93.   The term of the agreement provided DeltaTRAK the ability to manufacture BTTC

26  products through December 31, 2012.

27  ///

28  ///

Bowles & Verna LLP
2121 N. California Blvd.
Suite 875
Walnut Creek 94596

13

Case No.: CV 10-04958 JSW

FIRST AMENDED COMPLAINT

94.     DeltaTRAK is informed and believes, and alleges thereon, that BTTC has utilized, and is presently utilizing, the manufacturing services of a third party manufacturer for BTTC products in breach of the parties agreement.

95.     DeltaTRAK performed all obligations, covenants, terms and conditions required to be performed on its part pursuant to the terms of the agreement.  Any performance which has not been rendered has been excused, waived, or is not yet due or is unenforceable as a matter of law.

96.     BTTC has breached the agreement by, among other things, utilizing a third party manufacturer to manufacture BTTC products that it was agreed DeltaTRAK would have the rights to manufacture and failing to compensate DeltaTRAK for its services, which compensation is valued at more than a hundred thousand dollars.

97.     As a direct and proximate result of the breach of the terms of the agreement by BTTC, DeltaTRAK has been damaged in an amount according to proof at trial, but in no event less than the jurisdictional minimum of this Court.

## FIFTH CAUSE OF ACTION

### (Injunctive Relief by DeltaTRAK against Abreu, BTTC, and Does 1-100)

98.     The allegations set forth in paragraphs 1 through 97 are re-alleged and incorporated herein by reference.

99.     BTTC and Abreu have obtained DeltaTRAK's Intellectual Property in the form of valuable proprietary equipment and firmware for which BTTC and Abreu have not paid compensation.

100.    DeltaTRAK has advised BTTC and Abreu that it considers its Intellectual Property to be owned by DeltaTRAK until such time as compensation is paid by BTTC and Abreu. BTTC and Abreu have wrongfully refused to provide such compensation.

101.    The conduct of BTTC and Abreu is further wrongful as DeltaTRAK is informed and believes and alleges thereon that BTTC and Abreu have engaged the services of a third party, Titone and Titronics, to reverse-engineer DeltaTRAK's Intellectual Property for creation of derivative works. The conduct of Titone and Titronics is wrongful as they know the materials are not available on the open market and that the ownership of the Intellectual Property is claimed by Wu and DeltaTRAK.

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

14

Case No.: CV 10-04958 JSW

FIRST AMENDED COMPLAINT

102.    Unless and until enjoined, BTTC and Abreu will continue their wrongful and harmful conduct and proceed with wrongfully appropriating DeltaTRAK's Intellectual Property without compensation and with irreparable harm to DeltaTRAK.

103.    DeltaTRAK has no adequate remedy at law for the damages to be sustained if BTTC and Abreu continue their wrongful conduct.

### SIXTH CAUSE OF ACTION

**(Conversion by DeltaTRAK against Abreu, BTTC, Titone, Titronics, and Does 1-100)**

104.    The allegations set forth in paragraphs 1 through 103 are re-alleged and incorporated herein by reference.

105.    DeltaTRAK rightfully owned right, title and possession of its Intellectual Property that had been developed in conjunction with BTTC and Abreu.

106.    BTTC and Abreu intentionally and wrongfully took possession of DeltaTRAK's Intellectual Property and have and continue to hold out such Intellectual Property as its own and without payment of compensation to DeltaTRAK.

107.    DeltaTRAK did not consent to the wrongful possession of its Intellectual Property by BTTC and Abreu.

108.    Wu and DeltaTRAK are informed and believe and allege thereon that BTTC provided the Intellectual Property developed by Wu and DeltaTRAK to Titone and his company Titronics sometime after May 2009 following a suggestion by Titone that Titronics should manufacture BTTC products rather than DeltaTRAK.

109.    At this time Titone and Titronics were aware that they were in possession of DeltaTRAK's Intellectual Property and that DeltaTRAK had not been paid for that Intellectual Property.

110.    Wu and DeltaTRAK are informed and believe and allege thereon that Titone and Titronics, with direction from Abreu and BTTC, have reverse engineered the Intellectual Property and have extracted certain unique components developed by Wu and DeltaTRAK for inclusion in new devices.  The Intellectual Property developed by Wu and DeltaTRAK for Abreu and BTTC is not available on the open market and is unique and proprietary.

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

15

Case No.: CV 10-04958 JSW

FIRST AMENDED COMPLAINT

111.    Wu and DeltaTRAK are informed and believe and allege thereon that Titone and Titronics are aware that Wu and DeltaTRAK developed such Intellectual Property, have not been compensated for such Intellectual Property, and that there is a dispute with Abreu and BTTC over compensation and ownership.

112.    BTTC, Abreu, Titone and Titronics have refused to cease and desist from wrongfully using DeltaTRAK's intellectual property without compensation despite requests from DeltaTRAK that it do so.  DeltaTRAK never consented to the use of its Intellectual Property by Titone, Titronics, Abreu, or BTTC.

113.    DeltaTRAK has been harmed as a result of the conduct of BTTC, Abreu, Titone, and Titronics in that it has lost control of its Intellectual Property and has not been compensated for its work.

114.    The conduct of BTTC, Abreu, Titone, and Titronics was a substantial factor in causing DeltaTRAK's harm.

### SEVENTH CAUSE OF ACTION

#### (Intentional Interference with Contractual Relations by Wu and DeltaTRAK against Titone, Titronics and Does 1-100)

115.    The allegations set forth in paragraphs 1 through 114 are re-alleged and incorporated herein by reference.

116.    Titone, as a shareholder and consultant of BTTC, and Titronics were aware that DeltaTRAK and BTTC and Abreu had agreements by which DeltaTRAK was to furnish research, development, design and prototyping services as well as product development and manufacturing services for which BTTC was to compensate DeltaTRAK.  Wu and Titone regularly discussed the services that DeltaTRAK was providing to BTTC and Abreu.  Titone was also aware of Plaintiffs' agreement with Abreu and BTTC whereby, in exchange for investment of $500,000, Plaintiffs would receive preferred shares and Wu would be made a director of BTTC and, in addition, would be compensated annually for his directorial role by the issuance to him of several thousand additional common shares per year.

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

16

Case No.: CV 10-04958 JSW

FIRST AMENDED COMPLAINT

117.    On information and belief, Titone suggested to Abreu and BTTC that Titronics could perform the same development and manufacturing services as DeltaTRAK for BTTC by reverse engineering DeltaTRAK's Intellectual Property.  Titone and Titronics intended by this suggestion that BTTC terminate its relationship with Plaintiffs and utilize Titone and Titronics for the same services which were previously provided by Plaintiffs.  With Titronics performing these services, BTTC no longer would need the services of DeltaTRAK and Wu.

118.    As a result of Titone's suggestion, BTTC and Abreu breached their contracts with Plaintiffs and began to utilize Titone and Titronics to provide the same services.  Because they no longer required future services from Plaintiffs, BTTC and Abreu were encouraged to further breach their agreements with Plaintiffs and thus failed to compensate Plaintiffs for the services already rendered.  The actions of Titone and Titronics were a substantial factor in causing the breach of the contracts between Plaintiffs and BTTC and Abreu.

119.    Plaintiffs were harmed by the breach of these agreements in that they lost their investment in BTTC.  Wu lost his seat on the Board of Directors and the stock in his name was never issued.

## EIGHTH CAUSE OF ACTION

### (Intentional Interference with Prospective Economic Relations by Wu and DeltaTRAK against Titone, Titronics, and Does 1-100)

120.    The allegations set forth in paragraphs 1 through 119 are re-alleged and incorporated herein by reference.

121.    The allegations set forth in paragraphs 1 through 89 are re-alleged and incorporated herein by reference.

122.    Titone, as a shareholder and consultant of BTTC, and Titronics were aware that DeltaTRAK and BTTC and Abreu had a business relationship by which DeltaTRAK was to furnish research, development, design and prototyping services as well as product development and manufacturing services for which BTTC was to compensate DeltaTRAK.   Wu and Titone regularly discussed the services that DeltaTRAK was providing to BTTC and Abreu.  Titone was also aware of Plaintiffs' agreement with Abreu and BTTC whereby, in exchange for investment of $500,000,

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

17

Case No.: CV 10-04958 JSW

FIRST AMENDED COMPLAINT

Plaintiffs would receive preferred shares and Wu would be made a director of BTTC and, in addition, would be compensated annually for his directorial role by the issuance to him of several thousand additional common shares per year.

123.     Based on the contracts, the course of dealing between the parties, and the development work that DeltaTRAK had already done on the Brain Temperature Tunnel, Plaintiffs had a reasonable expectation that DeltaTRAK would provide manufacturing services for the Brain Temperature Tunnel once it was approved for sale and that DeltaTRAK would be further compensated for these manufacturing services.

124.     On information and belief, Titone suggested to Abreu and BTTC that Titronics could perform the same development and manufacturing services as DeltaTRAK for BTTC by reverse engineering DeltaTRAK's Intellectual Property.  Titone and Titronics intended by this suggestion that BTTC terminate its relationship with Plaintiffs and utilize Titone and Titronics for the same services which were previously provided by Plaintiffs.  With Titronics performing these services, BTTC no longer would need the services of DeltaTRAK and Wu.  Instead, Titone and Titronics would receive compensation as the provider of manufacturing services for the BTT.

125.     The conduct of Titone and Titronics was wrongful, as Titone utilized his positions as a consultant and investor in BTTC and the information gleaned in his conversations with Wu and Abreu to determine that Titronics could reverse engineer the Intellectual Property developed by Plaintiffs.

126.     As a result of Titone's suggestion, BTTC and Abreu breached their contracts with Plaintiffs and began to utilize Titone and Titronics to provide the same services.  Further, the actions of Titone and Titronics were a substantial factor in causing BTTC and Abreu to abandon the parties' plans to use DeltaTRAK as manufacturer of the BTT once it was approved.

127.     Plaintiffs were harmed by the breach of these agreements in that they lost their investment in BTTC.  Wu lost his seat on the Board of Directors and the stock in his name was never issued.  As a result of Titone and Titronics' interference with the business arrangement between Plaintiffs and BTTC and Abreu, DeltaTRAK was prevented from providing future manufacturing services for the BTT once it was approved and deprived of any compensation therefrom.

///

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

18                                        Case No.: CV 10-04958 JSW
FIRST AMENDED COMPLAINT

**NINTH CAUSE OF ACTION**

**(Declaratory Relief by Wu and DeltaTRAK against Abreu, BTTC and Does 1-100)**

128.    The allegations set forth in paragraphs 1 through 127 are re-alleged and incorporated herein by reference.

129.    As alleged above, there is a substantial controversy between Wu, DeltaTRAK, Abreu and BTTC as to the ownership of the intellectual property rights to BTT instrument prototypes, proprietary sensor assemblies and related parts, component schematic drawings and molds for parts that were prepared by Wu and DeltaTRAK but for which Abreu and BTTC have refused to pay.

130.    Whereas, Wu and DeltaTRAK contend that any intellectual property remains the property of Wu and DeltaTRAK so long as Abreu and BTTC refuse to pay for the benefit of that information.  Abreu and BTTC contend that anything related to the BTT concept remains the intellectual property of BTTC regardless of whether Wu and DeltaTRAK contributed to the development of the concept and regardless of whether Abreu or BTTC paid compensation for any services related thereto.

131.    Wherefore, Wu and DeltaTRAK seek a judicial declaration under 28 U.S.C. § 2201that Wu and DeltaTRAK retain the ownership right to any intellectual property rights to BTT instrument prototypes, proprietary sensor assemblies and related parts, component schematic drawings and molds for parts that were prepared by Wu and DeltaTRAK but for which Abreu and BTTC have refused to pay.

**TENTH CAUSE OF ACTION**

**(Unjust Enrichment by Wu and DeltaTRAK against Abreu, BTTC and Does 1-100)**

132.    The allegations set forth in paragraphs 1 through 131 are re-alleged and incorporated herein by reference.

133.    As alleged above, BTTC retained Wu in or around April 2006 as a research and development consultant and agreed, in addition, and in part pursuant to a September 2006 agreement, to provide compensation to DeltaTRAK for use of its facilities as a business location and for research, development, design and prototyping services rendered.

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

19

Case No.: CV 10-04958 JSW

FIRST AMENDED COMPLAINT

134.     Abreu and BTTC benefitted from these services by reason of the increased value to the intellectual property of the BTT concept in addition to the use of facilities and receipt of business services.

135.     Abreu and BTTC acknowledged that compensation was due and that Wu or his designee was to be issued more than one hundred thousand shares at a value of $3.20 per share with a value well in excess of the jurisdictional minimum, all according to proof at trial.

136.     Wu and DeltaTRAK also provided Abreu and BTTC research, development and prototyping services for the Gee-U technology valued at approximately $35,100, all according to proof at trial.  Plaintiffs were to receive 10,968 common shares of BTTC stock for these services at a $3.20 per share valuation.

137.     Despite demand by Wu and DeltaTRAK, Abreu and BTTC, without justification, have not paid for the benefits received from Wu and DeltaTRAK.

138.     The failure of Abreu and BTTC to pay for the services and materials provided by Wu and DeltaTRAK has been detrimental to Wu and DeltaTRAK.

## **PRAYER**

WHEREFORE, DeltaTRAK and Wu pray for judgment against Defendants and Does 1-100, and each of them, as follows:

**On the First, Third, and Fourth Causes of Action for Breach of Contract:**

1.     For compensatory damages in an amount to be proven at trial;

2.     For prejudgment interest at the legal rate from and to a date according to proof at trial;

**On the Second Cause of Action for Negligent Misrepresentation:**

3.     For general and special damages in an amount to be proven at trial;

**On the Fifth Cause of Action for Injunctive Relief:**

4.     For a judgment in favor of DeltaTRAK enjoining Abreu, BTTC, Titone, and Titronics from utilizing any product, material, process or software developed by DeltaTRAK for which DeltaTRAK has not been compensated;

**On the Sixth Cause of Action for Conversion:**

5.     For damages for the value of the property taken in an amount to be proven at trial;

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

20

Case No.: CV 10-04958 JSW

FIRST AMENDED COMPLAINT

1  **On the Seventh Cause of Action for Intentional Interference with Contractual Relations:**

2       6.     For general and special damages in an amount to be proven at trial;

3  **On the Eighth Cause of Action for Intentional Interference with Prospective Economic Relations:**

4       7.     For general and special damages in an amount to be proven at trial;

5  **On the Ninth Cause of Action for Declaratory Relief:**

6       8.     For a declaratory judgment that DeltaTRAK's contentions relating to its ownership of

7  intellectual property rights to BTT instrument prototypes, proprietary sensor assemblies and related

8  parts, component schematic drawings and molds for parts that were prepared by Wu and DeltaTRAK

9  but for which Abreu and BTTC have refused to pay for as set forth above are correct;

10 **On the Tenth Cause of Action for Unjust Enrichment:**

11      9.     For restitution in an amount to be proven at trial and equal to the value of the services

12 performed and property provided; and

13 **For All Causes of Action:**

14      10.     For costs of suit herein incurred;

15      11.     For attorneys' fees as allowed by law; and

16      12.     For such other and further relief as this Court may deem just and proper.

17                           **JURY DEMAND**

18      Plaintiffs hereby demand a trial by jury pursuant to Fed. Rule of Civ. Proc. 38(b).

19 Dated: January 13, 2011                  BOWLES & VERNA LLP

20

21                           By:    /s/ MICHAEL P. CONNOLLY
                                     RICHARD T. BOWLES

22                                      BRADLEY R. BOWLES
                                     MICHAEL P. CONNOLLY

23                                      Attorneys for Plaintiffs
                                     DATA MARK, INC. dba DELTATRAK

24                                      TECHNOLOGIES, a California
                                     corporation, FREDERICK L. WU, an

25                                      individual

26

27

28

Bowles & Verna LLP
2121 N. California Blvd.
Suite 875
Walnut Creek 94596

Case No.: CV 10-04958 JSW

**FIRST AMENDED COMPLAINT**